**E.H. McDOWELL, Appellant in No. 83–3008,**

v.

**Michael PAIEWONSKY, Appellant in No. 83–3007.**

Nos. 83–3008, 83–3007.

United States Court of Appeals, Third Circuit.

Argued April 22, 1985.

Decided August 7, 1985.

Rehearing and Rehearing In Banc Denied Sept. 10, 1985.

---

Samuel H. Seymour (argued), Barbara Schneider Jost Chapman, Duff and Paul, Washington, D.C., for appellant Michael A. Paiewonsky.

Samuel H. Hall, Jr. (argued), St. Thomas, U.S. Virgin Islands, for appellee E.H. McDowell.

Before ADAMS, GARTH and BECKER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

An architect-engineer with a long history of work on public projects brought a defamation suit against a senator in the Virgin Islands legislature based on allegedly false remarks made by the senator during a weekly political broadcast. Ruling that the plaintiff was a private figure, the district court permitted recovery upon a showing of negligence on the part of the senator. Because we determine that plaintiff was a limited purpose public figure and that no evidence of actual malice was adduced, we will reverse the judgment of the district court and order that judgment be entered for the defendant.

### I.

Plaintiff, E.H. McDowell, is a licensed architect and civil engineer who has participated in numerous public building projects over the years, including the Evelyn Williams School, the psychiatric wing of the Knud-Hansen Memorial Hospital, and the Bovoni Junior High School. According to the district court, "the record reflects that McDowell has regularly contracted with the Government of the Virgin Islands to perform work on public building projects, some of which have been controversial in nature...." App. at 1120a.

Defendant Michael Paiewonsky served two terms as a senator in the Virgin Islands legislature, from 1979–83. During his tenure, like many other politicians in the Virgin Islands, Paiewonsky paid for a weekly radio broadcast. He called these five-minute broadcasts "Small Talk." Prior to his election to the Virgin Islands Senate, Paiewonsky was a member of the Virgin Islands Board of Education, and served as Chairman of the Board's Committee on School Construction. During that time, he became very involved in the areas of school construction and design. Defendant continued to be concerned with these subjects after his election to the Virgin Islands Senate, and served as Chairman of the Senate Committee on Education and Health from 1979–81. Based on these facts, the district court concluded that Paiewonsky "devoted a good deal of his energies while in elective office toward the government's planning and construction of various public facilities." App. at 1111a.

It was not unusual, therefore, that defendant's April 24, 1981 "Small Talk" broadcast discussed, as had several previous broadcasts, certain problems encountered in publicly financed building projects, such as the Bovoni Junior High School. In particular, the broadcast focused on the possibility that John Harding, the Executive Director of the Port Authority, had a conflict of interest. Harding had been appointed an arbitrator on a panel reviewing a million dollar claim filed by McDowell against the Government of the Virgin Islands for allegedly wrongfully withholding funds in regard to the construction of the Bovoni School. Paiewonsky charged that there was a major conflict of interest because Harding and McDowell supposedly were personal friends and because Harding had recommended McDowell to conduct a $183,000 proposal study for the Port Au-

thority. In addition, Paiewonsky criticized Harding for attempting to hire McDowell for the Port Authority project in light of McDowell's performance on previous government projects. Specifically, Senator Paiewonsky stated that:

> Mr. McDowell has done a number of projects for the Government of the Virgin Islands. He did the engineering on the Evelyn Williams School in St. Croix which has been plagued with flooding problems since its inception. He has done the entire drawings and plans for the Bovoni Junior High School in St. Thomas—a trouble-plagued project. He did the newest section of the Knud Hansen Hospital about five or six years ago, the obstetrics neuro-psychiatric ward which has leaked since its inception and has had to have its entire gallery removed and replaced as well as having been plagued with air conditioning problems relating to the design of the system from its inception. Mr. McDowell has also done the drawings of the waterfront highway extension that the Governor wanted that was rejected out-of-hand by the federal authorities who were going to fund the project because of inadequacies in the design.

App. at 1069a.

On May 6, 1981, McDowell brought a five-count defamation suit against Senator Paiewonsky based on defendant's allegedly false remarks made during two "Small Talk" broadcasts, during a speech, and in a letter. The district court dismissed Count II, which involved a letter sent by defendant to McDowell, because of a lack of publication. Count I concerned defendant's statements regarding plaintiff during an earlier "Small Talk" broadcast in 1979, and Count III was predicated upon remarks the Senator made on the steps of the Virgin Islands Capitol to a disgruntled group of teachers. Count IV dealt with the April 24 broadcast, and Count V requested punitive damages. After refusing to grant the Sen-

ator immunity from suit on the basis of the speech or debate clause contained in section 6(d) of the Revised Organic Act of 1954, 48 U.S.C. § 1572(d) (1982), and after finding that McDowell was not a public figure, the district court permitted the case to proceed to trial.

The jury found for plaintiff on Count IV and awarded him $50,000 in compensatory damages. It did not award punitive damages and was unable to reach a decision on Counts I and III. The district court entered judgment for plaintiff on Count IV, without disposing of Counts I and III. After plaintiff waived his right to a retrial on those claims, the district court entered an amended final judgment granting McDowell relief on Count IV and dismissing the remaining counts. It is from this order that defendant brings his appeal.

## II.

This Court has repeatedly noted that although a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action. Accordingly, adjudicating such claims requires inquiries under both state and federal law. *See Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072, 1077 (3d Cir.1985). In the first instance, the Court must determine whether the defendant has injured the plaintiff's reputation under the applicable state law. If so, then the Court must ascertain whether the First Amendment nevertheless prohibits the imposition of liability. *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 270 (3d Cir.1980).

Attacking the jury's verdict under the first consideration, Paiewonsky asserts that the award for plaintiff must be reversed because the "Small Talk" broadcast contained no actionable defamation under applicable Virgin Islands law. As a matter of substantive law, the Virgin Islands has adopted the restatements of law.[1] Accord-

---

1. V.I. Code Ann. tit. 1, § 4 (1967) states:
   The rules of the common law, as expressed in the restatements of the law approved by the

American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of

ing to the Restatement (Second) of Torts § 558 (1977):

> To create liability for defamation there must be:
>
> (a) a false and defamatory statement concerning another;
>
> (b) an unprivileged publication to a third party;
>
> (c) fault amounting at least to negligence on the part of the publisher; and
>
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Under the Restatement (Second) of Torts, to be actionable a communication must be a misstatement of fact[2] capable of defamatory meaning[3] that is of and concerning the plaintiff.[4]

Paiewonsky challenges the jury's verdict as inconsistent with these rules. He asserts that the April 24 "Small Talk" remarks are not actionable because the remarks: (1) are not capable of defamatory meaning, (2) are substantially true, (3) do not concern McDowell, and (4) are protected opinions not based on undisclosed defamatory facts. In contrast, during his opening and closing remarks to the jury, plaintiff represented that a number of statements in the broadcast were false and defamatory. For example, McDowell asserted that

(1) his work on the Evelyn Williams School had nothing to do with the flooding at the school;

(2) his work on the Bovoni School had nothing to do with its being "a trouble-plagued project;"

(3) he had not "built" the wing of the Knud Hansen Hospital that housed the psychiatric ward;

(4) the hospital ward had not "leaked since its inception;" its gallery had not been removed; and problems with the air conditioning did not relate to the design of the system;

(5) plaintiff had not done the drawings for a proposed waterfront extension project;

(6) although John Harding, Executive Director of the Port Authority, and plaintiff admittedly were personal friends, they had not lunched together several times a week over a period of years;

(7) Harding did not have a conflict of interest, stemming from his friendship with plaintiff, in acting as an arbitrator on plaintiff's claim against the Government of the Virgin Islands for withholding payments on the Bovoni School; and

decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

Accordingly, defendant's argument that the Virgin Islands civil defamation law is guided by that of New York is incorrect. The source of this misimpression comes from *Skeoch v. Ottley*, 377 F.2d 804, 810 (3d Cir.1967). After noting that the Virgin Islands has adopted the restatements, the Court in *Skeoch*, in an offhand manner and as additional support for the Restatement of Torts' substantive position on when a statement is capable of defamatory meaning, stated that the Virgin Islands law of libel looks to that of New York. *Id.* In support of this proposition, the Reviser's Note to V.I.Code Ann. tit. 14, § 1171 (1964) is cited. That note, however, merely indicates that the Virgin Islands criminal law of libel was being updated to reflect the modern view, and that New York Penal Law § .1340 was being used as the model. Thus while the Virgin Islands criminal libel statute may have been drafted on the basis of its New

York counterpart, any reliance on this fact in interpretating the Virgin Islands civil defamation law, which is based on the common law, is misplaced. More importantly, V.I.Code Ann. tit. 1, § 4, quoted above, explicitly adopts the restatements of law as the substantive law of the Virgin Islands.

2. *See* Restatement (Second) of Torts §§ 565, 581A (1977). An opinion is generally not defamatory unless it is based upon undisclosed defamatory facts. *See* Restatement (Second) of Torts § 566 (1977).

3. Restatement (Second) of Torts § 559 (1977) provides that "[a] communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

4. *See* Restatement (Second) of Torts §§ 559, 564 (1977).

(8) plaintiff had not tried to use his friendship with Harding to obtain a contract from the Port Authority.

App. at 126a–29a; 961a–78a.

■ Although defendant may be correct that much of the broadcast is not defamatory, we are unable to say that as a matter of law the jury could not have found at least some of the statements actionable. For example, Paiewonsky declared that McDowell had designed the "newest section of the Knud Hansen Hospital ... [which was] plagued with air conditioning problems relating to the design of the system from its inception." App. at 1069a. This statement is clearly of and concerning plaintiff and capable of defamatory meaning. Whether or not it is substantially true is a question for the jury. Since plaintiff produced some evidence that the problem was caused by improper cleaning and maintenance of the air conditioning units, rather than by the system's design, we cannot say that a reasonable jury could not have found the statement defamatory. Further, the statement is clearly one of fact and not opinion. Thus we are unable to accept defendant's argument that his remarks contained no actionable material.[5]

### III.

Paiewonsky next argues that even if the broadcast contained actionable statements, the jury was permitted to find for plaintiff under an incorrect First Amendment standard. Because the district court determined that McDowell was a private figure, it instructed the jury that plaintiff could recover compensatory damages upon a showing of mere negligence. Defendant contends that plaintiff was, in fact, a limit-

ed purpose public figure and therefore should have been required to demonstrate actual malice on the part of Paiewonsky. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

In *New York Times* and its progeny, the Supreme Court has mandated that public officials or public figures must prove "actual malice" to recover damages in a defamation case. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (public figures); *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 725–26 (public officials). In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court subdivided the public figure category into two classes: all purpose public figures and limited purpose public figures. Some individuals "occupy positions of such pervasive power and influence that they are deemed public figures for all purposes." *Id.* at 345, 94 S.Ct. at 3009. More common are individuals who become involved in a public controversy and thereby become transformed into public figures only with regard to that particular controversy. *Id.* The Court in *Gertz* explained that "an individual [who] voluntarily injects himself or is drawn into a particular public controversy ... thereby becomes a public figure for a limited range of issues." *Id.* at 351, 94 S.Ct. at 3013.

The distinction between public and private figures is justified on two grounds. First is the rationale of self-help. Public figures have "greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individ-

---

5. Paiewonsky advances an alternative argument: the proposition that under our holding in *Avins v. White*, 627 F.2d 637 (3d Cir.), *cert. denied*, 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980), a remand is necessary. In that case, we held that where a jury is permitted to base its verdict on both defamatory and non-defamatory statements, the judgment must be vacated and remanded for a new trial limited to remarks that are capable of defamatory meaning. Here, the jury returned a general verdict on Count IV that the broadcast was defamatory. If, as defendant asserts, the jury was permitted to consider certain nonactionable statements, such as opinions, or the disparaging remarks regarding Harding's conflict of interest which are not of and concerning McDowell, *Avins* arguably requires the case to be remanded. Because of our disposition of the case on public figure grounds, however, we need not reach this contention.

uals normally enjoy." *Id.* at 344, 94 S.Ct. at 3009. Second, and perhaps more important, is the notion of assumption of risk. Public officials and public figures in some sense voluntarily put themselves in a position of greater public scrutiny and thus assume the risk that disparaging remarks will be negligently made about them. *Id.* at 344–45, 94 S.Ct. at 3009–10; *see also Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979).

■ Paiewonsky does not assert that McDowell's numerous government contracts render plaintiff a public official or that plaintiff achieved such pervasive notoriety in the community that he was an all purpose public figure. Rather, defendant contends that the district court should have concluded that McDowell was a limited purpose public figure. We have recently set forth a two-part inquiry for determining whether a defamation plaintiff is a limited purpose public figure. The court must consider (1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy. *Marcone,* 754 F.2d at 1082; *see also Gertz,* 418 U.S. at 352, 94 S.Ct. at 3013; *Avins v. White,* 627 F.2d at 647.

■ There can be no real dispute that any defamatory remark in the April 24 broadcast concerned a public controversy, *i.e.,* "a real dispute, the outcome of which affects the general public or some segment of it." *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1296 (D.C.Cir.), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980); *see also Marcone,* 754 F.2d at 1083 (adopting this definition of a public controversy); *Avins v. White,* 627 F.2d at 647.[6] Paiewonsky's talk focused on the allegation that John Harding had a conflict of interest. As the Executive Director of the Virgin Islands Port Authority, Harding had recently recommended McDo-

well—who defendant asserted was a personal friend of Harding—to undertake a $183,000 study for the Port Authority. At the same time, Harding was acting as an arbitrator in plaintiff's million dollar lawsuit against the government, which stemmed from the Bovoni High School project. This controversy, involving a possible conflict of interest of a government official, the awarding of government contracts, and the expenditure of hundreds of thousands of dollars is undeniably a matter of public concern. Moreover, the potential conflict of interest had been the subject of a hearing before the Commerce Committee of the Virgin Islands legislature only a week before the broadcast.

The remainder of the remarks pertaining to McDowell addressed his performance on various public building projects. Many of these projects admittedly encountered numerous difficulties and delays. Perhaps the best example is found in the innumerable problems surrounding the construction of the Bovoni School. Originally scheduled to be ready for the beginning of the school year in September 1978, the facility was not completed until February 1981. The long delay and the numerous problems encountered during construction caused substantial cost overruns and engendered intense media attention in the Virgin Islands. In addition, in May of 1979, the Virgin Islands legislature directed the Attorney General to conduct an investigation into the project. The resulting published report was highly critical of all involved with Bovoni, including McDowell. Similarly, at the direction of the executive branch of the government, the United States Comptroller for the Virgin Islands issued a report criticizing the Bovoni project on August 15, 1979. Paiewonsky's statements regarding McDowell's performance on public projects are clearly within the scope of the public controversy adverted to in the alleged defamatory remarks.

---

**6.** Whether a statement involves a matter of public concern must be determined by its " 'content, form, and context.... as revealed by the whole record.' " *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* —— U.S. ——, ——, 105 S.Ct. 2939, 2947, 86 L.Ed.2d 593 (1985) (plurality opinion) (quoting *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983)).

Having determined that the "Small Talk" broadcast concerned a public controversy, we now must examine the nature and extent of McDowell's participation in this controversy. Relying primarily on *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), the district court determined that McDowell was not a public figure. In *Hutchinson*, the plaintiff received a federal grant to conduct research on aggression. Until he received Senator Proxmire's Golden Fleece Award, the plaintiff was a relatively obscure scientist. The Supreme Court held that a generalized concern over public expenditures was not sufficient to render Hutchinson a public figure. The Court noted that "[i]f it were, everyone who received or benefitted from the myriad public grants for research could be classified as a public figure." *Id.* at 135, 99 S.Ct. at 2688.

■ The district court was correct in holding that merely working on government contracts, like merely receiving research grants, should not transform a person into a limited purpose public figure. But McDowell is quite different from the relatively unknown research scientist in *Hutchinson*. At the time of the April 24, 1981 "Small Talk" broadcast, plaintiff and the government projects referred to in the alleged defamation had been the subject of considerable media attention at least since the end of 1978. Moreover, the Bovoni School project had been the subject of two official investigations in 1979 which led to the issuance of highly critical reports by the Attorney General and the United States Comptroller for the Virgin Islands. Prominent among the reasons advanced for the problems and delays with the project were the inadequacies of the architectural plans.

We note that there is no bootstrapping—a matter of some concern to the Court in *Hutchinson*—in the publicity surrounding McDowell and his projects. Unlike the plaintiff in *Hutchinson*, McDowell was the subject of significant public notoriety and scrutiny well before the allegedly defamatory broadcast. *Cf. Hutchinson*, 443 U.S. at 134–35 (plaintiff gained notorie-

ty only after the alleged libel). Moreover, plaintiff's characterization of himself as being a virtually unknown architect who occasionally worked on public building projects is somewhat disingenuous. In fact, plaintiff's own arguments with respect to Count III of his suit seem to belie this characterization. Count III was based on an impromptu speech Paiewonsky made to a group of irate teachers on the steps of the Capitol in December of 1980—five months before the April 24 talk. During this talk, Paiewonsky never mentioned McDowell by name. In order to prove that the allegedly defamatory remarks to the teachers were of and concerning McDowell, his counsel, in closing arguments, asserted that plaintiff's name was "married in the public's mind to the [Bovoni] School" and that "[e]verybody knew that [he] had been castigated" for his work on the project. App. at 969a. Thus it is difficult to maintain that plaintiff was not the subject of intense public attention and a personality of some prominence prior to the April 24 broadcast.

■ Even assuming that he had achieved considerable notoriety, plaintiff asserts that he never sought such status and therefore cannot be deemed a public figure. It is true that becoming a public figure generally involves some notion of voluntariness. But the voluntariness requirement may be satisfied even though an individual does not intend to attract attention by his actions. When an individual undertakes a course of conduct that invites attention, even though such attention is neither sought nor desired, he may be deemed a public figure. *See Marcone*, 754 F.2d at 1083; *see also Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859 (5th Cir.1978). For example, a professional football player was classified as a limited purpose public figure because of the inevitable publicity that accompanies such a position. *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (in banc); *see also Barry v. Time, Inc.*, 584 F.Supp. 1110, 1113 (N.D.Cal.1984). In *Chuy*, the district court stated:

Where a person has, however, *chosen* to engage in a profession which draws him regularly into regional and national view and leads to "fame and notoriety in the community," even if he has no ideological thesis to promulgate, he invites general public discussion.... If society chooses to direct massive public attention to a particular sphere of activity, those who enter that sphere inviting such attention must overcome the *Times* standard....

*Chuy v. Philadelphia Eagles Football Club,* 431 F.Supp. 254, 267 (E.D.Pa.1977), *aff'd,* 595 F.2d 1265 (3d Cir.1979) (in banc).

McDowell similarly can be considered to have voluntarily assumed a position that invited attention. From its inception, the Bovoni School project received substantial media attention. According to the Attorney General's 1979 Report on Bovoni, the Government of the Virgin Islands advertised for bids to construct the school in 1976. Because all bids submitted on the original plans exceeded the available funding, the Governor directed that the plans be modified within six months in order that the facility could be built within the budgetary constraints. App. at 1080a. The original architect declined to make the required changes within the specified time frame. The Attorney General's Report notes that "many people, including the government's architects and engineers, believed ... that the architectural plans could not be completed within the allotted time and that the architect was undertaking an impossible job of meeting the deadline." *Id.* The architect who attempted this impossible task was, of course, McDowell. The report continued, "[t]his grave mistake of attempting to do an impossible task of modifying the original architectural plant within an impossible time period was to haunt the entire construction project once construction commenced." *Id.* at 1081a.

McDowell's decision to accept the Bovoni assignment almost inevitably put him into the vortex of a public controversy. Just as a professional athlete or coach must accept the attendant publicity surrounding his decision to assume his position,[7] so must plaintiff accept the consequences of his decision. In addition, we note that the Bovoni School was not plaintiff's only project engendering public scrutiny. The Evelyn Williams School, on which plaintiff worked, was also roundly criticized in an audit by the Virgin Islands Department of Public Works. Plaintiff has continued to bid for or otherwise has attempted to obtain public projects after the initial publicity surrounding the Bovoni School.

■ The actions of the plaintiff are sufficient to transform him into a public figure for the limited purpose of his work on publicly financed building projects—the subject of the alleged defamatory remarks. We do not doubt McDowell's sincerity that he did not intend to seek such status. But as this Court recently stated,

if [plaintiff's] actions are sufficient to transform him into a limited public figure, it is of no moment that [plaintiff] did not desire such status. The purpose of the First Amendment would be frustrated if those persons and activities that most require public scrutiny could wrap themselves in a veil of secrecy and thus remain beyond the reach of public knowledge.

*Marcone,* 754 F.2d at 1086; *see also Rosanova v. Playboy Enterprises, Inc.,* 580 F.2d 859 (5th Cir.1978).[8]

Thus we hold that the district court erred when it ruled that McDowell was a private figure. Considering the public nature of the controversy, the intense media and governmental scrutiny of plaintiff's activities, his pre-1981 notoriety as evidenced by his own attorney's assertion that he "was married in the public's mind to the [Bovoni]

---

7. *See Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Chuy,* 595 F.2d at 1265; *Barry,* 584 F.Supp. at 1113.

8. This case does not raise the issue whether a truly involuntary public figure can exist. *See*

*Gertz,* 418 U.S. at 351, 94 S.Ct. at 3012; Note, *The Involuntary Public Figure Class of Gertz v. Robert Welch: Dead or Merely Dormant?,* 14 U.Mich.J.L.Ref. 71 (1980).

School," App. at 969a, and his voluntarily placing himself into the public controversy by accepting the impossible task of redesigning the Bovoni School within a circumscribed time frame, plaintiff must be deemed a limited purpose public figure.

### IV.

Because McDowell is a limited purpose public figure, he must prove that defendant's remarks were made with actual malice, as prescribed in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Since the jury was permitted to award plaintiff compensatory damages upon a showing of mere negligence, we cannot permit the verdict to stand. But we need not remand for a new trial. McDowell sought punitive as well as actual damages and therefore attempted to demonstrate that Paiewonsky's alleged misstatements were made with the requisite actual malice.

Plaintiff thus had ample opportunity and motivation to adduce evidence of actual malice. In one sense, the jury has already answered the question whether plaintiff has met this high standard; no punitive damages were awarded. However, because the jury may have declined to award punitive damages for reasons other than plaintiff's failure to prove actual malice, we do not rely entirely on the jury's verdict.

Rather, we must fulfill our obligation to " 'make an independent examination of the whole record' in order to make sure 'that the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting *New York Times*, 376 U.S. at 295, 84 S.Ct. at 734); *see also Marcone*, 754 F.2d at 1088. The actual malice standard requires that the defendant make the defamatory remarks with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280, 84 S.Ct. at 726. The Supreme Court subsequently explained that reckless disregard for the

truth means that the defendant "in fact entertained serious doubts as to the truth" of the statement, *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), or that the defendant had a "subjective awareness of probable falsity." *Gertz*, 418 U.S. at 335 n. 6, 94 S.Ct. at 3004 n. 6.

■ In the present case, plaintiff has not met this high standard of proof; there simply is no evidence that Paiewonsky entertained serious doubts about the truth of his remarks. McDowell points to numerous supposed errors contained in the broadcast as proof that plaintiff acted with actual malice. But such a res ipsa loquitur argument has little relevance to the actual malice calculus. Although some misstatements may well have been made, the First Amendment, even for a private figure, requires more than proof of false statements. To some extent, defendant relied on the official reports and news accounts of the various construction projects. While it arguably may have been negligent not to have checked independently the veracity of this information, any fault does not rise to the level of actual malice. *See St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325; *New York Times*, 376 U.S. at 288, 84 S.Ct. at 730; *Dickey v. CBS*, 583 F.2d 1221 (3d Cir.1978).

■ Plaintiff's only other evidence of actual malice is that several people apparently warned the defendant to check his facts before making his broadcasts. Again, Paiewonsky's failure to verify his facts may have been negligent, but does not rise to the level of actual malice. Furthermore, contrary to plaintiff's assertion, the alleged misstatements regarding McDowell are not so "inherently improbable" that defendant should have been put on notice as to their possible falsity. *See St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326.

### V.

Based on our independent review of the record, we conclude that plaintiff has failed to prove that defendant's alleged defam-

atory remarks were made with actual malice. The judgment of the district court will be reversed and judgment for the defendant will be entered.