OPINION OF THE COURT
John P. Lane, J.
Defendant moves this court for an order declaring plaintiff a public figure for the purposes of a defamation action. Defendant also seeks a moratorium on the extension of all discovery and other scheduling order deadlines pending determination of the motion, a request that is now moot.
*606 Whether plaintiff is a public figure is, in the first instance, a question of law to be determined by the court (Dameron v Washington Mag., Inc., 779 F2d 736 [1985]; Waldbaum v Fairchild Publs., Inc., 627 F2d 1287 [1980], cert denied 449 US 898 [1980]; Medure v New York Times Co., 60 F Supp 2d 477, 484 [1999]). While defendant contends that plaintiff should be declared, at the very least, a “limited purpose” public figure, plaintiff argues that he is not such a figure for any purpose.
The Supreme Court in Gertz v Robert Welch, Inc. (418 US 323 [1974]) created two subclassifications, “persons who are public figures for all purposes and those who are public figures for particular public controversies” (Waldbaum, 627 F2d at 1292; see also White v Tarbell, 284 AD2d 888, 889 [2001]). Plaintiff is not a public figure for all purposes. The second classification, or limited-purpose public figure is “an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues” (Gertz at 351).
In reaching a determination whether a plaintiff is a limited-purpose public figure, a multistep analysis is employed. The questions are essentially whether there was a particular public controversy that gave rise to the alleged defamation and what was the nature and extent of the plaintiff’s participation in that controversy (see, e.g., Waicker v Scranton Times, 113 Md App 621, 630, 688 A2d 535, 540 [1997]; Brueggemeyer v American Broadcasting Cos., Inc., 684 F Supp 452 [1988]). Also to be considered is whether the alleged defamation was related to that controversy (see Medure, 60 F Supp 2d 477 [1999]). Courts in New York have applied a similar analysis (see, e.g., Daniel Goldreyer, Ltd. v Dow Jones & Co., 259 AD2d 353 [1999]).
Plaintiff was active in real estate rehabilitation and redevelopment in the City of Buffalo in the mid to late 1970s. Over the years, he received extensive media coverage as a prominent real estate developer, operator of Hamlin Terrace nursing facility, and businessman who secured public funding to finance his projects. From about late 1977 through late 1980, numerous articles were published in the Buffalo Evening News and the Buffalo Courier-Express spotlighting plaintiff’s real estate development efforts and his business practices. Four of the articles focused on planned nursing home developments in which he was involved.
The publications in the Buffalo Evening News at issue here are an article entitled Unscrupulous Operation Gouges Nursing Home, published on May 22, 1994, and an editorial *607 published on May 25, 1994, entitled Profiting from the Poor— Nursing Home situation was unconscionable. The news article concerned the troubled Hamlin Terrace Health Care Center (Hamlin Terrace) and the business practices of plaintiff (Finnerty affidavit, exhibit 1). The article included two photos, one a headshot of the plaintiff, and the second, a photo of plaintiff with his parents and business partners, Frances and Jacob Hoescht. It also included a chronology of events entitled The Saga of Lawrence E. White and Hamlin Terrace dating back to the 1970s. The news article summarized the feelings of federal housing officials as: “Hamlin Terrace’s owners and operators are portrayed as shrewd businessmen who paid themselves handsomely while contending there was not enough cash to improve the nursing home * * It described Lawrence E. White as a businessman “with a knack for obtaining money from government programs and conducting his deals in a bewildering maze of partnerships and corporations” and spoke of an investigation of plaintiff by the City of Buffalo’s Common Council in 1980. Three days later, the Buffalo Evening News published the editorial that was highly critical of the manner in which plaintiff operated the nursing home and of his use of federal low-interest housing rehabilitation loans for other unrelated projects. The editorial describes a five-year ban on any government activity imposed by the United States Department of Housing and Urban Development as a penalty and discusses “equity skimming” by Hamlin Terrace’s owners and operators (Finnerty affidavit, exhibit 5).
Plaintiff contends both the article and the editorial were defamatory. However, that is not the issue before the court at this time.
In order to qualify as a public controversy, the outcome of the dispute must be one “which affects the general public or some segment of it in an appreciable way” (Krauss v Globe Intl., 251 AD2d 191, 192 [1998] [citations and internal quotation marks omitted]; see also Waicker, 113 Md App at 630, 688 A2d at 540). Here plaintiff’s involvement in the nursing home industry and in the revitalization of the community, as plaintiff claimed, were clearly disputes affecting the elderly population and the general public as well.
Next to be examined is “the nature and extent of an individual’s participation in the particular controversy giving rise to the defamation” (Gertz, 418 US at 352; Waldbaum, 627 F2d at 1292). This is an objective test to view the facts of a situation, taken as a whole, through the eyes of a reasonable person (Waldbaum at 1293).
*608 Here plaintiff was the center of the Hamlin Terrace controversy. It was he who proclaimed that the new nursing home would be one of the job-creating forces in the City of Buffalo. He prided himself on being involved in the redevelopment of Buffalo. It was plaintiff who sought to use public funds to successfully develop and operate the nursing home and called attention to the shortage of nursing home beds in western New York. It was his business practices that led to investigations by local and federal authorities. Like the plaintiffs in Waicker (113 Md App 621, 688 A2d 535 [1997]), a prominent real estate developer accused of “blockbusting” in the City of Baltimore, and Brueggemeyer (684 F Supp 452 [1988]), a seller of bulk meats, White’s involvement was central to the controversy at issue. Moreover, in the past White took advantage of effective channels of communication as evidenced by the numerous newspaper articles describing his affairs and directly quoting him. It matters not that many of the articles temporally preceded the complained of writings for a public figure, once established, remains a public figure for later comment on that controversy or subject matter (see Contemporary Mission, Inc. v New York Times Co., 842 F2d 612 [1988], cert denied sub nom. O’Reilly v New York Times Co., 488 US 856 [1988]).
Plaintiff here was the subject of newspaper articles concerning real estate redevelopment of depressed areas in the City of Buffalo since the 1970s as well as subsequent nursing home ventures. He actively sought publicity for his proposed Hamlin Terrace facility, claiming it was a “big event” for the City. Unlike the situation in Mahoney v State of New York (236 AD2d 37 [1997]), plaintiff not only sought and received public monies and was involved in a controversial industry, the totality of his past conduct and business practices supports a finding that he is a limited-purpose public figure (see Waldbaum, 627 F2d 1287 [1980]).
“[W]hen one assumes a position of great influence within a specific area and uses that influence to advocate and practice controversial policies that substantially affect others, he becomes a public figure for that debate” (Waldbaum, 627 F2d at 1300). “In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts * * * [In other cases, as here, he] becomes a public figure for a limited range of issues” (White v Tarbell, 284 AD2d 888, 889 [2001], citing Gertz, 418 US at 351). Here defendant has aptly demonstrated that plaintiff is *609 a limited-purpose public figure for a narrow range of issues including his nursing home activities.
Defendant’s motion is granted to the extent indicated.