OPINION OF THE COURT
John P. Lane, J.
In a prior decision and order, this court considered a news article and an editorial published in May 1994 in defendant Berkshire-Hathaway, Inc.’s The Buffalo News, which plaintiff *255 claimed were defamatory. The news article, written by defendant Henry L. Davis, which appeared on the front page of the local section, summarized the opinions of federal housing officials concerning the operation of Hamlin Terrace Health Care Center and plaintiff’s business practices. The editorial, published three days after the news article, was highly critical of plaintiff’s operation of the nursing home and his use of federal low-interest housing rehabilitation loans for other unrelated projects. The court granted defendants partial summary judgment declaring that plaintiff, Lawrence E. White, was a “limited-purpose” public figure.*
In order for a limited-purpose public figure to prove defamation, the stringent constitutional standard of “actual malice,” that is, the writing was false or was written with a reckless disregard for the truth (see New York Times Co. v Sullivan, 376 US 254 [1964]; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 379 [1977], cert denied 434 US 969 [1977]), must be satisfied. The burden of proof is on plaintiff to establish constitutional malice'by clear and convincing evidence (see Rinaldi v Viking Penguin, 52 NY2d 422 [1981]; ATN Marts v Ireland, 195 AD2d 959 [1993]; Bee Pubis, v Cheektowaga Times, 107 AD2d 382 [1985]).
Plaintiff now limits his claim solely to the headline of the news article, “Unscrupulous operation gouges nursing home,” asserting that it is defamatory in nature and it was written with actual malice. Defendants move for summary judgment dismissing the complaint. For the reasons that follow, the court finds that plaintiff’s defamation claim fails and the complaint must be dismissed.
In order to determine whether the headline of a news article is defamatory in nature, “the court must initially determine whether the headline was a fair index of the article with which it appears” (Mondello v Newsday, Inc., 6 AD3d 586, 587 [2004], citing Schermerhom v Rosenberg, 73 AD2d 276, 286-287 [1980]). This threshold question is one of law for the court, not a question of fact for a jury (see Pritchard v Herald Co., 120 AD2d 956 [1986]). If the headline is indeed a “fair index” of the related news article, it is not actionable as a matter of law (see Gunduz v New York Post Co., 188 AD2d 294, 294 [1992], citing Schermerhorn at 286; accord Von Gerichten v Long Is. Advance, 202 AD2d 495 [1994]).
*256 When reviewing a constitutional challenge to a headline, both the headline and the news article are considered together (see Schermerhorn at 287; Cole Fisher Rogow, Inc. v Carl Ally, Inc., 29 AD2d 423, 426 [1968], affd 25 NY2d 943 [1969]). Where, as here, the headline is an accurate reflection of the accompanying article, it is not defamatory (see Von Gerichten; Gunduz).
It is significant that plaintiff was not named in the headline at issue. Unlike Schermerhorn, where a racial slur was attributed directly to that plaintiffs, speech, the headline here fails not only to specifically refer to plaintiff by name, it omits a reference to any person whatsoever. Instead, it speaks to an “operation” rather than an “operator.” A headline that does not directly name the plaintiff is not independently actionable (see Chaiken v W Publ. Corp., 907 F Supp 689, 698 [SD NY 1995], affd 119 F3d 1018 [2d Cir 1997], cert denied 522 US 1149 [1998]). Moreover, the headline here did not stretch or distort a statement attributable to plaintiff White (compare Schermerhorn).
Plaintiff takes particular issue with the words “[unscrupulous” and “gouges.” While these words are a far cry from flattery, they are supported by findings contained in the Department of Housing and Urban Development Inspector General’s investigation reported in the news article. These words are not shockingly offensive in today’s society nor were they in 1994 (see generally Rinaldi v Holt, Rinehart & Winston at 379; Pritchard v Herald Co., 120 AD2d 956 [1986]). Furthermore, they are not as inflammatory as words referring to someone as “PUBLIC ENEMY NO. 1,” a label deemed not actionable in Gunduz (188 AD2d at 294). Finally, the court takes judicial notice of a customary journalistic practice calling for the use of a verb to command the reader’s attention to a news article. Although the verb “gouges” is a strong one, it does not rise to the level of actionable malice in the context of this case (see e.g. Pritchard).
Defendants’ motion is granted.

 White v Berkshire-Hathway (195 Misc 2d 605 [2003], affd 5 AD3d 1083 [2004] for reasons stated below).