OPINION OF THE COURT
Thomas P. Phelan, J.
*468 Motion by plaintiffs for an order pursuant to CPLR 3212 awarding them summary judgment on liability and granting them presumed and punitive damages, or alternatively setting the case down for a trial on damages, is denied. Plaintiffs’ additional request for judgment dismissing defendant’s affirmative defenses and counterclaims is granted.
Cross motion by defendant for summary judgment dismissing plaintiffs’ complaint is granted. Defendant’s additional request for attorneys’ fees and costs and sanctions pursuant to 22 NYCRR 130-1.1 is denied.
Plaintiff Spring Lake Building Corp. is the sponsor of Birch-wood at Spring Lake, a residential community in Middle Island, Suffolk County, New York. Plaintiff Ron Horowitz is and was a principal and vice-president of the sponsor. In addition, he is a principal of a number of other sponsoring entities for developments in Jackson Heights, Holtsville, Oakdale and Holbrook, New York. He also develops and manages residential communities having homeowner associations in other states including New Jersey, Maryland and Virginia.
Plaintiff Horowitz was also the president of the Board of Managers of the Homeowners’ Association at Birchwood at Spring Lake. He does not deny that he was the main speaker at meetings to inform residents of the status of ongoing projects.
Defendant John Mannoia was a resident at Birchwood at Spring Lake for nearly 10 years. While there, he served on various committees for the Homeowners’ Association, including the Ad Hoc Legal Committee which commenced an action in 1998 in the name of the Homeowners’ Association and 91 individual homeowners against Horowitz and the sponsor (the homeowners’ action). The claims by the homeowners therein involved alleged mismanagement and unjust enrichment of the sponsor at the expense of the homeowners. That lawsuit settled in January 2005. The details of the settlement have not been provided to this court.
In this action plaintiffs seek damages for alleged “business defamation” found in a 1999 article written by defendant and published in “Spring Lake Reflections,” a Birchwood at Spring Lake community newsletter. The article states that on May 26, 1999, when plaintiff Horowitz answered questions from residents “many of his answers were not the truth.” Later in the article defendant wrote, “The sponsor continues to be dishonest with us. This is why our legal action against him originated.” The newsletter was circulated to 376 members of *469 the Homeowners’ Association, and 45 businesses in the area who advertise in the newsletter, as well as prospective purchasers of homes at Birchwood. In reply to plaintiffs’ claims of harm to their reputation, defendant insists that sales at Birchwood have increased.
Defendant asserts two counterclaims in his answer to plaintiffs’ complaint, one for commencement of a frivolous action, and a second for making the following statement at a public meeting in May 1999: “All of the problems that the project is having were caused by John Mannoia and the Ad/Hoc Legal Committee.”
Defendant seeks dismissal of plaintiffs’ complaint on the grounds that both plaintiffs are public figures and subjects of public concern and as such plaintiffs must prove “actual malice” in order to recover damages for defamation (Huggins v Moore, 94 NY2d 296, 301 [1999]). Actual malice is defined for constitutional purposes as either knowledge that the challenged statement is false or reckless disregard for the truth (Huggins at 301, citing New York Times Co. v Sullivan, 376 US 254, 279-280 [1964]).
Plaintiffs completely reject defendant’s analysis. They argue that because defendant had transferred his interest in his home to a trust for his sons, he did not even own a home in Birch-wood and was not a proper member of the Homeowners’ Association after 1993.
For the purposes of this lawsuit, plaintiffs’ attempt to deny defendant the status of a homeowner at Birchwood is rejected. This court will not elevate form over substance. The substance of the matter is that defendant and his wife lived at Birchwood and defendant played an active role on committees in the Homeowners’ Association, including the Ad Hoc Legal Committee. The technicality of whether defendant continued as the titleholder of his residence after he purchased it is not something that will deprive defendant of a defense to a claim of defamation.
Whether a plaintiff is a public figure requires examination as to whether there has been a clear showing of general fame or notoriety in the community and pervasive involvement in the affairs of society, whether the plaintiff is a well-known celebrity and whether his name is a “household word” (Waldbaum v Fairchild Pubis., Inc., 627 F2d 1287, 1294 [1980], cert denied 449 US 898 [1980], citing Gertz v Robert Welch, Inc., 418 US 323, 352 [1974]). The test involves name recognition, previous *470 press coverage, the voluntariness of plaintiffs prominence and the availability of self-help through press coverage (Waldbaum at 1295). While a prominent local real estate developer and builder was conceded to be a “public figure in the community” in Greenbelt Cooperative Publishing Assn., Inc. v Bresler (398 US 6, 8 [1970]), no such concession has been made here. The court finds that there has been no showing that plaintiffs are public figures generally.
Nevertheless, a plaintiff may be considered a limited purpose public figure when the person becomes influential in a single issue (Waldbaum at 1298), or when the person has thrust himself to the forefront of a particular public controversy in order to influence the resolution of the issue involved (Gertz at 345). The content of the subject publication must be “arguably within the sphere of legitimate public concern” (Huggins at 302). A real estate developer may be a limited purpose public figure (White v Berkshire-Hathaway, 195 Misc 2d 605 [2003], affd 5 AD3d 1083 [2004]). The analysis involves whether there was a particular public controversy that gave rise to the alleged defamation, the nature and extent of the plaintiffs participation in that controversy, and the relation of the alleged defamation to the controversy (White v Berkshire-Hathaway, 195 Misc 2d at 606).
Here, plaintiffs are experienced real estate sponsors and developers. The controversy at issue is the construction of one or two new clubhouses at Birchwood at Spring Lake, and the homeowners’ action. This court finds that these issues are arguably a matter of public concern, as the Birchwood development is sizeable, sales were ongoing, and changes in the plans had to be filed as amendments to the offering plan. Plaintiffs were at the center of the controversy, as it was their decision whether to proceed with the two clubhouses projected, or one larger clubhouse, and they appeared at the meeting of residents to answer questions dealing with this issue. Plaintiffs were also responsible for developing the budgets challenged in the homeowners’ lawsuit. Finally, in the context of defendant’s article, the alleged defamation concerns plaintiffs’ handling of the controversy, and not plaintiffs’ businesses generally.
On this record, the court finds that plaintiffs are limited purpose public figures for the narrow range of issues concerning the homeowners’ action and the clubhouses at Birchwood (see White v Berkshire-Hathaway, supra). Defendant has testified that “my absolute belief in the truth of the statements, as supported by the facts and my duty to convey these facts to my fel *471 low homeowners was my only motivation” (Mannoia affidavit para 73). Under these circumstances, moving forward to a trial on the defense of truth is unnecessary as the record contains no evidence of actual malice.
Accordingly, in the absence of a showing of actual malice sufficient to raise a triable issue of fact, defendant is entitled to summary judgment dismissing the complaint.
Turning to the counterclaims, defendant first seeks sanctions and punitive damages against plaintiffs on the grounds that their action is frivolous. “Frivolous conduct” is defined, in pertinent part, as conduct that “is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law” (22 NYCRR 130-1.1 [c] [1]). On this record, the court finds that plaintiffs’ complaint was not completely frivolous, within the meaning of 22 NYCRR 130-1.1 (c) (1). For this reason, plaintiffs’ request for summary judgment dismissing this counterclaim must be granted. For the same reason, defendant’s request for attorneys’ fees, costs, and sanctions on this motion must be denied.
In his second counterclaim defendant alleges that plaintiffs defamed him by the public statement “[a]ll of the problems that the project is having were caused by John Mannoia and the Ad/ Hoc Legal Committee.” Plaintiffs argue that this statement is nonactionable opinion.
Whether a statement may constitute nonactionable opinion is one of law for the court and one which must be answered on the basis of what the average person would understand the statement to mean (Steinhilber v Alphonse, 68 NY2d 283, 290 [1986]). The factors for consideration are: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statement is capable of being proven true or false; (3) whether either the full context of the communication or the broader social context or setting surrounding the communication might signal to readers that the statement is likely to be an opinion (Brian v Richardson, 87 NY2d 46, 51 [1995]). In an acrimonious contest, the “audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole” (Brian at 52, quoting Steinhilber at 294, quoting Information Control Corp. v Genesis One Computer Corp., 611 F2d 781, 784 [1980]).
Here, the parties were adversaries in the midst of litigating the homeowners’ action against plaintiffs. In this context, the challenged statement should have signaled to listeners, who *472 were homeowners, that the statement was no more than rhetorical hyperbole (see Greenbelt Cooperative Publishing Assn., Inc. v Bresler, 398 US 6, 14 [1970] [where accusation of “blackmail” was held to be rhetorical hyperbole in the context of heated debate]). Moreover, the statement is broad and general, and not capable of being proven true. Under these circumstances, the court holds that the statement which is the subject of defendant’s second counterclaim is nonactionable opinion. Consequently plaintiffs are entitled to summary judgment dismissing this counterclaim as well.
This action is, in all respects, dismissed without costs.