936 A.2d 1010 (2007)
397 N.J. Super. 222
John C. BERKERY, Sr., Plaintiff-Appellant
v.
Monica Yant KINNEY, Philadelphia Newspapers, Inc., and Knight-Ridder, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 2007.
Decided December 18, 2007.
*1011 John C. Berkery, Sr., argued the cause pro se.
Warren W. Faulk, Westmont, argued the cause for respondents (Brown & Connery, attorneys; Mr. Faulk, on the brief).
Before Judges PARKER, R.B. COLEMAN and LYONS.
The opinion of the court was delivered by
PARKER, J.A.D.
In this defamation case, plaintiff John C. Berkery, Sr., appeals from an order entered on October 20, 2006 granting summary judgment in favor of defendants dismissing the complaint with prejudice. We affirm.
This case arises out of two articles written by defendant Monica Yant Kinney and *1012 published in the Philadelphia Inquirer.[1] The following is a summary of the facts relevant to this appeal. Temple University Professor, Allen Hornblum, authored a book entitled Confessions of a Second Story Man: Junior Kripplebauer and the K & A Gang. The book focused on a criminal gang that operated in the 1950s and early sixties and named plaintiff as a member of the gang who participated in a number of crimes, including the 1959 "Pottsville heist," a robbery allegedly committed by the K & A Gang. The articles written by Kinney addressed plaintiff's attempts to stop Hornblum from publishing the book and his defamation suit against Hornblum.
In this appeal, plaintiff argues that (1) the trial court "made no definitive finding as to whether or not plaintiff was a `first amendment limited-purpose public figure;'" (2) plaintiff "has been a private individual with a right to privacy and not a public figure, limited-purpose public figure, or so-called `involuntary' limited-purpose public figure;" (3) the case of Sisler v. Gannett Co., 104 N.J. 256, 516 A.2d 1083 (1986), "was a totally wrong-headed application of the United States Supreme Court's standards for applying the malice standard;" (4) plaintiff "shunned, rather than courted the press;" and (5) defendant Kinney falsely accused plaintiff of being "a thug, thief, burglar, mob associate, lawbreaker, and murderer, statements that are libelous per se."
In his brief, plaintiff acknowledged six criminal convictions, including larceny, passing bogus traveler's checks, attempted burglary of an unoccupied warehouse, assault and battery, and two drug offenses. He characterized these offenses as "minor scrapes with the law," and objected to Kinney's characterization of him as a "career criminal." Plaintiff argues that Hornblum's book and Kinney's articles overlook the fact that he has "completed college, gone on to obtain a Master's Degree in English & [sic] Publishing from Rosemont College, a year of law school at Regent University in Virginia Beach, and a post-baccalaureate paralegal degree from Manna College in Jenkintown, Pa." Plaintiff claims that the two articles written by Kinney and published in the Philadelphia Inquirer contain numerous fallacies, constitute an invasion of his privacy, an intrusion upon his seclusion and intentionally inflicted emotional distress upon him.
In granting summary judgment, the trial judge found that there was no invasion of privacy because all of the information in the articles was either obtained through observation of plaintiff by Kinney during an interview with plaintiff or through public sources. The court noted that "there were very few comments [relating] to [plaintiff's] private life, other than to call [him] a suburban dad." In the trial court's opinion, those comments were not defamatory. The trial court further noted that the one word it found problematical was "thug" used in the first sentence of the first article: "John Berkery was never a typical street thug." The court indicated, however, that the word was used in the past tense and referred to plaintiff's earlier conduct. The judge further indicated that "[a]ctual malice is a tough standard to meet. It's so tough that clearly and convincingly is the standard [rather than] a preponderance of the evidence."
In New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that recovery for defamation is limited by the First Amendment requirement *1013 that public officials or public figures prove actual malice to recover damages. A public figure "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789, 807 (1974) (citing New York Times, supra, 376 U.S. at 279, 84 S.Ct. at 726, 11 L.Ed.2d at 702).
In Gertz, the United States Supreme Court distinguished between an all-purpose public figure who has achieved "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts" and a limited-purpose public figure who "`voluntarily injects himself or is drawn into a particular public controversy.'" 418 U.S. at 351, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. The Supreme Court noted that:
It may be possible for someone to become a public figure through no purposeful action of his own . . . those [classified] as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.
[Id. at 345, 94 S.Ct. at 3009, 41 L.Ed.2d at 808.]
An individual who engages in criminal conduct does not automatically become a public figure for purposes of comment on a limited range of issues relating to his conviction. Wolston v. Reader's Digest Assoc., 443 U.S. 157, 168, 99 S.Ct. 2701, 2708, 61 L.Ed.2d 450, 461 (1979). Rather, certain criteria must be met for one to become a limited-purpose public figure: "The court must consider (1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." McDowell v. Paiewonsky, 769 F.2d 942, 948 (3d Cir.1985); see also Marcone v. Penthouse Int'l, 754 F.2d 1072, 1082 (3d Cir.), cert. denied, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). A "public controversy" is defined as "a real dispute, the outcome of which affects the general public or some segment of it" and the "content, form, and context . . . as revealed by the whole record" must be considered. McDowell, supra, 769 F.2d at 948 (quoting Waldbaum v. Fairchild Publications, Inc., 201 U.S.App.D.C. 301, 627 F.2d 1287, 1296 (D.C.Cir.), cert. denied, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980)).
An individual's involvement in publicized criminal activities and associations with organized criminal groups qualifies as a public controversy or issue that gives rise to limited-purpose public figure status. Marcone, supra, 754 F.2d at 1086; Rosanova v. Playboy Enterprises, Inc., 411 F.Supp. 440 (S.D.Ga.1976), aff'd, 580 F.2d 859 (5th Cir.1978). In Scottsdale Publishing, Inc. v. Superior Court, 159 Ariz. 72, 764 P.2d 1131 (Ct.App.1988), the Arizona Court of Appeals held that a "career criminal" who, in return for immunity from prosecution, testified as to his own criminal activities as a member of an organized crime gang was a public figure for purposes of his defamation action against a newspaper that published articles tying him to the murder of a local reporter. While acknowledging that the United States Supreme Court in Wolston, supra, 443 U.S. at 168, 99 S.Ct. at 2705, 61 L.Ed.2d at 461, declined to hold that any person who engaged in criminal conduct automatically became a public figure, the Arizona court found that given the nature, duration and intensity of plaintiff's criminal conduct, he could not complain that the spotlight eventually turned on him years *1014 after his crimes. Scottsdale Publishing, supra, 764 P.2d at 1140.
Plaintiff maintains that he is not a public figure because he now lives a private lifestyle. But, "once a person becomes a public figure in connection with a particular controversy, that person remains a public figure thereafter for purposes of later commentary or treatment of that controversy." Street v. National Broadcasting Co., 645 F.2d 1227, 1235 (6th Cir.), cert. dismissed, 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981); White v. Berkshire-Hathaway, 195 Misc.2d 605, 759 N.Y.S.2d 638, 640 (Sup.Ct. Erie County 2003), aff'd, 5 A.D.3d 1083, 773 N.Y.S.2d 664 (4th Dep't 2004) (holding "a public figure, once established, remains a public figure for later comment on that controversy or subject matter").
In Sisler, the New Jersey Supreme Court adopted the malice standard articulated by the United States Supreme Court in New York Times with respect to public figures. Sisler, supra, 104 N.J. 256, 279, 516 A.2d 1083 (1986). Plaintiff argues, however, that Sisler "was a totally wrong-headed application of the United States Supreme Court's standards for applying the malice standard." We disagree.
The malice standard for a defamation claim involving the public interest is entirely consistent with the United States Supreme Court's rulings. In Sisler, the New Jersey Supreme Court considered, but expressly rejected, the negligence standard for a public interest matter:
The negligence standard adopted by the courts below is inappropriate in the context of a defamation action that focuses upon published matters of legitimate public concern involving a knowledgeable individual who exposes himself to the risk of possible publicity. The uniqueness, variability and complexity of the tort of defamation suggest the need for a more exacting standard of liability. . . . [T]he negligence standard, which provides needed flexibility in the area of physical torts, may serve as a tool of censorship in the context of free speech and defamation. . . . New Jersey's long-standing expressed concern for free speech likewise advises against the use of the negligence standard in the context of this case.
[104 N.J. at 276-77, 516 A.2d 1083.]
Articulating a "more exacting standard of liability," the Court stated:
We hold that when a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice.
[Id. at 279, 516 A.2d 1083.]
Since Sisler, the Supreme Court and our court have recognized that even if a plaintiff is a private, rather than a limited- or all-purpose public figure, the plaintiff may only recover in a defamation action concerning the public interest if actual malice is shown. See, e.g., Rocci v. Ecole Secondaire MacDonald-Cartier, 165 N.J. 149, 155-56, 755 A.2d 583 (2000); Murphy v. Implicito, 392 N.J.Super. 245, 256-257, 920 A.2d 678 (App.Div.2007); Verna v. Links at Valleybrook Neighborhood Assoc., 371 N.J.Super. 77, 96, 852 A.2d 202 (App.Div.2004).
Considering plaintiff's admissions with respect to his prior criminal convictions and the public records regarding his prior criminal involvement, plaintiff clearly qualifies as a limited-purpose public figure who must prove actual malice to recover *1015 in a defamation action. Even if he were not a limited-purpose public figure, he is still required to prove actual malice with respect to alleged defamatory statements relating to matters of legitimate public interest. LoBiondo v. Schwartz, 323 N.J.Super. 391, 409, 733 A.2d 516 (App. Div.), certif. denied, 162 N.J. 488, 744 A.2d 1211 (1999) (holding "the actual malice standard applies not only to those having the actual status of a public official or other public figure but also to those whose actions or interests have so involved them in a matter of public interest that for purposes of speech respecting that matter, they must be regarded as public figures.").
Plaintiff alleged that defendants, particularly Kinney, operated with actual malice in publishing the newspaper articles about him. He maintains that the articles were intended to pressure and intimidate him to drop his lawsuit against Hornblum, a personal friend of Kinney. He has not presented clear and convincing evidence to support that claim, however. "[T]he appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1089 (3d Cir.1988); and see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
After considering the record presented, we agree with the trial court's finding that plaintiff failed to submit sufficient evidence from which a jury could clearly and convincingly conclude that any of the defendants acted with actual malice. The Supreme Court has held that "summary judgment is particularly appropriate for disposing of non-meritorious defamation suits." Rocci, supra, 165 N.J. at 158, 755 A.2d 583; Costello v. Ocean County Observer, 136 N.J. 594, 605, 643 A.2d 1012 (1994); and see Sedore v. Recorder Publishing Co., 315 N.J.Super. 137, 163, 716 A.2d 1196 (App.Div.1998).
We have carefully considered the record before us and we are satisfied that plaintiff's remaining arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We are satisfied that the judgment of the trial court was adequately supported by the evidence and we affirm substantially for the reasons stated by Judge Irvin J. Snyder in his decision rendered on the record of October 20, 2006. R. 2:11-3(e)(1)(A).
Affirmed.
NOTES
[1] Defendant Philadelphia Newspapers, Inc., publishes the Philadelphia Inquirer and defendant Knight-Ridder, Inc., is its parent company.