920 A.2d 678 (2007)
392 N.J. Super. 245
David MURPHY and Marilyn Murphy, Plaintiffs-Appellants,
v.
Dante IMPLICITO, M.D., George Jacobs, M.D., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2007.
Decided April 18, 2007.
*682 Barry D. Epstein, Rochelle Park, argued the cause for appellants (Epstein Beirne, attorneys; Michael J. Epstein, on the brief).
Thomas B. Leyhane, New Brunswick, argued the cause for respondent, George B. Jacobs, M.D. (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Leyhane, of counsel and on the brief).
William S. Mezzomo, Springfield, argued the cause for respondent, Dante Implicito, M.D. (McDonough, Korn, Eichhorn & Schorr, attorneys; R. Scott Eichhorn, of counsel and on the brief).
Before Judges CUFF, WINKELSTEIN & FUENTES.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiff, David Murphy, injured his back at work. He claims that contrary to his wishes, defendant doctors implanted cadaver ("allograft") bone in his spine during back surgery. In his complaint, he alleged medical negligence based on a lack of informed consent; battery; and breach of contract; and his wife, Marilyn Murphy, claimed a loss of consortium.[1]
The case was tried in December 2003. After the completion of plaintiff's case, the court dismissed the complaint pursuant to Rule 4:37-2(b). On appeal, in an unpublished decision, we affirmed the dismissal of the informed consent claim, but reversed the dismissal of, and reinstated, plaintiff's battery and breach of contract claims, and his wife's per quod claim. Murphy v. Implicito, No. A-3172-03, 2005 WL 2447776 (App.Div. Sept. 22, 2005).
Prior to the retrial, the parties requested that the trial court determine the scope of damages plaintiffs could potentially recover. Accordingly, on November 17, 2006, the trial court entered an order limiting plaintiff's recovery to damages caused directly by the use of cadaver bone material. The court also limited plaintiff's wife's per quod recovery to the battery claim and barred her per quod claim for breach of contract. We granted plaintiff's emergent application for leave to appeal and now reverse and modify the trial judge's order.

I. Background
In September 1996, plaintiff injured his back while lifting a pallet at work, causing him "horrific" pain, and leaving him unable to sleep, sit in a chair, or lie down. His treating physician referred him to defendant Dr. Dante Implicito, an orthopedic surgeon. After conservative treatment was unsuccessful, Dr. Implicito proposed surgery to remove pieces of bone from plaintiff's spine and replace them with bone grafts. Plaintiff alleges he consented to the surgery only on the condition that the doctor not place cadaver bone in his spine, and the doctor agreed to use plaintiff's own bone material ("autograft" bone). The doctor testified that he did not recall this discussion.
At the request of plaintiff's workers compensation carrier, he received a second opinion from another orthopedic surgeon, defendant Dr. George Jacobs, who agreed that plaintiff needed surgery. Plaintiff testified that he also informed Dr. Jacobs, who was to act as a co-surgeon with Dr. Implicito, that he did not want cadaver bone used in the surgery, and that the *683 doctor agreed not to use it. Dr. Jacobs denied this conversation.
On the day of the surgery, July 22, 1997, plaintiff signed a consent-to-surgery form, which was also to be signed by a doctor. The form described the surgery as a "lumbar diskectomy and fusion with iliac crest bone graft + `steffe plates.'" Murphy, supra, No. A-3172-03 (slip op. at 4). Though someone had signed the form on the line where a doctor was to sign, both doctors denied signing it.
During the surgery, the doctors removed bone fragments and grafted plaintiff's own bone to his spine. They also used cadaver bone as dowels for the bone graft. Defendants do not dispute that they used cadaver bone in the surgery.
The grafted bone did not fuse, and consequently, because plaintiff remained in pain and continued to be totally disabled, his workers compensation carrier referred him to another orthopedist, Dr. Steven Reich. After reviewing an x-ray of plaintiff's spine, Dr. Reich informed him that cadaver bone had been used in the surgery. Plaintiff asserts that upon learning that defendants used cadaver bone in the surgery, he became so upset that he bent a chair in the doctor's office. During his deposition, Dr. Reich, who did not testify at trial, could not remember plaintiff having that reaction to the information.
Dr. Reich subsequently performed a second surgery, without using cadaver bone. He removed all the material from the first surgery, including the cadaver bone. After the second surgery, plaintiff continued to experience pain and remained totally disabled.
At the first trial, no expert opined that the first surgery failed because of the use of cadaver bone. Plaintiff's expert, Dr. Hervie Sicherman, testified that non-fusion is a recognized potential outcome of the surgery. All of the parties' experts agreed that the use of allograft bone created no increased risk of fusion failure.
Plaintiff's position on the motion to determine the scope of damages was that defendants failed to abide by the condition he placed on the surgery  that defendants not use cadaver bone  and that the breach of that condition constituted both a breach of contract and a battery. As such, plaintiff asserted he was entitled to recover damages not only directly arising from the use of cadaver bone, but all damages arising out of the surgery, including his resultant disability. Defendants, on the other hand, argued that plaintiff could only recover for the disability that he could prove directly resulted from the use of cadaver bone.
The court essentially agreed with defendants' position. While ruling that plaintiff may be entitled to nominal damages and damages for any psychological injury he suffered by virtue of defendants' use of cadaver bone, the judge limited plaintiff's potential recovery for pain, suffering and disability to damages "created by the use of a component part, that is, the use of the cadaver bone." The judge distinguished the New Jersey Supreme Court's decision in Perna v. Pirozzi, 92 N.J. 446, 460-61, 457 A.2d 431 (1983), which permits the jury to consider and award all damages arising out of a surgery performed without a patient's consent. The judge concluded that in Perna, because the physicians were not authorized to conduct the surgery at all, all of the damages related to the surgery were available to the plaintiff. Here, however, the judge found that the entire surgery was not at issue, but simply one component part of the surgery  the implantation of cadaver bone. Specifically, the court said: "the [Perna] case discussed battery in the context of unauthorized touching of another, which, again, *684 is not the aspect that the battery played in this case. There was no unauthorized touching of the plaintiff. There was unauthorized use of a particular material. . . ."
The judge also denied Marilyn Murphy's claim for per quod damages arising from the breach of contract claim. He stated: "I would think, the per quod claim is limited to the damages, which flow from the defendant's alleged tort of battery. The [c]ourt is not aware of authority for . . . per quod damages [for] breach of contract."
To support his damages claims, plaintiff proposes to offer at retrial the testimony of both Dr. Reich and Dr. Sicherman that the cadaver bone caused the failure of the first surgery. Because plaintiff did not proceed on that theory during the first trial, defendants object to him presenting such evidence at the retrial.

II. Retrial Evidence
We begin our discussion with the question of whether plaintiff may offer new evidence and additional theories of liability at the retrial. In Franklin Disc. Co. v. Ford, 27 N.J. 473, 492, 143 A.2d 161 (1958), the Supreme Court addressed this issue, stating,
Where a new trial has been granted "the case stands as if there had never been a trial; the court has the same power with reference to matters connected with the trial of the case as it had before the first trial was had, and it is the duty of the court to proceed as in the first instance. The new trial is had as if there had never been a previous one." New claims and defenses may be asserted in the subsequent trial.
[(citations omitted) (quoting Kimble v. Degenring, 116 N.J.L. 602, 603-04, 186 A. 451 (Sup.Ct.1936)).]
Our opinion in Sisler v. Gannett Co., 222 N.J.Super. 153, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988), also offers support for plaintiff's position. In Sisler, following the trial of a libel suit, the Supreme Court reversed a jury verdict for the plaintiff. Id. at 156, 536 A.2d 299 (citing Sisler v. Gannett Co., 104 N.J. 256, 516 A.2d 1083 (1986)). In doing so, the Court articulated a new standard for private figure defamation claims where the defamatory speech focused on the public interest, requiring that the defamatory statements be made with actual malice. Id. at 156, 158, 536 A.2d 299 (citing Sisler, supra, 104 N.J. at 279, 516 A.2d 1083). Following the Supreme Court's remand, the defendants claimed the question of malice could not be relitigated because, during the first trial, the court had dismissed the plaintiff's claim for punitive damages due to a lack of proof of actual malice. Id. at 158-59, 516 A.2d 1083. The trial judge agreed and entered summary judgment for the defendants. Ibid. On appeal, we reversed, concluding that because the second trial would be conducted "under a new standard . . . [the] plaintiff should have the opportunity to make different tactical decisions . . . [and] the new trial judge should have the right to make his own evidentiary rulings." Id. at 164, 516 A.2d 1083.
Guided by these principles, we conclude that in the retrial here, plaintiff is not limited to the same proofs and theories of liability that he offered in the first trial. "[T]he case stands as if there had never been a trial." Kimble, supra, 116 N.J.L. at 603, 186 A. 451.
Nevertheless, given the history of this case, we also conclude that plaintiff may not proceed on the theory that cadaver bone caused the first surgery to fail. None of the experts, including plaintiff's, have rendered an opinion consistent with this theory. While Dr. Reich testified at *685 his deposition that the fusion failed, he did not say the failure of the fusion was caused by the use of cadaver bone. In fact, he testified that the failure of the fusion was an "expected outcome" of the surgery. Neither did Dr. Sicherman testify to a causal link between the use of cadaver bone and the failure of the fusion.
Thus, because during the pendency of this case, no expert has opined that the failure of the fusion was caused by the use of cadaver bone, to permit plaintiff to proceed with that claim now would require reopening discovery. Plaintiff would either require a new expert, or Dr. Reich or Dr. Sicherman would essentially have to render opinions contrary to those they expressed in discovery or at the first trial. To counter the new opinion, defendants would be entitled to depose the expert who rendered the new opinion, and perhaps obtain new opinions of their own. That in turn could lead to additional discovery. At this stage of the proceedings, ten years post-surgery, to reopen discovery would simply be unfair to defendants. Consequently, while plaintiff is not limited to the theories and proofs he presented at the first trial, he may not, at the retrial, argue or present proofs that cadaver bone caused the first surgery to fail.

III. Damages
Next, we turn to the damages plaintiffs may be entitled to receive on retrial. As noted, we previously affirmed the dismissal of plaintiff's informed consent claim. In doing so, we analyzed the distinction between that claim and plaintiff's battery claim in the context of the New Jersey Supreme Court's decision in Howard v. Univ. of Med. & Dentistry of N.J., 172 N.J. 537, 800 A.2d 73 (2002). Murphy, supra, No. A-3172-03 (slip op. at 22-23). In this opinion, we will not repeat our analysis, but for purposes of providing a more complete understanding of plaintiff's claims, we will capsulize our analysis on that issue.
In our prior opinion, we observed that the facts in Howard distinguished it from the case at hand. Murphy, supra, No. A-3172-03 (slip op. at 22). In Howard, supra, the Supreme Court addressed whether the plaintiff's claim was properly cognizable as one for battery or one for lack of informed consent where the doctor misrepresented his credentials, which the plaintiff alleged induced him to proceed with a surgery he would not otherwise have undergone. 172 N.J. at 545-46, 556, 800 A.2d 73. The Court held that "only a claim based on lack of informed consent [would] lie" because no dispute existed that the plaintiff consented to the procedure that the doctor performed, and the doctor who performed the procedure was the one to whom the plaintiff had given consent. Id. at 552-53, 800 A.2d 73.
Here, however, the question is whether the doctors' breach of the condition plaintiff placed on his consent to the surgery constituted a failure by the doctors to perform the operative procedure that plaintiff had authorized. A failure to conduct the procedure authorized is the equivalent of operating with no consent, which constitutes a battery. Id. at 550, 800 A.2d 73; Whitley-Woodford v. Jones, 253 N.J.Super. 7, 11, 600 A.2d 946 (App. Div.1992). The doctors' actions here, unlike the misrepresentations of the defendant doctor in Howard, did not impact upon the risks to which plaintiff was exposed during the medical procedure. Their actions went to the nature of the operative procedure that plaintiff had authorized. Plaintiff's battery claim here is therefore distinguishable from his informed consent clam.

A. Battery
That takes us to plaintiff's claim for battery damages. A patient has three *686 avenues of tort relief against a doctor: "(1) deviation from the standard of care (medical malpractice); (2) lack of informed consent; and (3) battery." Howard, supra, 172 N.J. at 545, 800 A.2d 73. A battery is an unauthorized touching or invasion of the patient's body. Matthies v. Mastromonaco, 160 N.J. 26, 36, 733 A.2d 456 (1999). It is an intentional tort that may occur, for example, "when a doctor does not obtain the consent of his patient to perform a particular operative procedure." Whitley-Woodford, supra, 253 N.J.Super. at 11, 600 A.2d 946. "Any non-consensual touching is a battery. Even more private than the decision who may touch one's body is the decision who may cut it open and invade it with hands and instruments." Perna, supra, 92 N.J. at 461, 457 A.2d 431 (internal citations omitted).
A claim against a doctor based on principles of battery is often restricted to cases in which a physician has not obtained any consent or has exceeded the scope of consent. Matthies, supra, 160 N.J. at 35, 733 A.2d 456. Where the consent granted by the patient is subsequently vitiated, the surgery is rendered a battery. Howard, supra, 172 N.J. at 550, 800 A.2d 73; see also Hogan v. Tavzel, 660 So.2d 350, 352-53 (Fla.Dist.Ct.App.1995) (cause of action in battery will lie, and consent will be ineffective, if consenting person was mistaken about the nature and quality of the invasion intended), review denied, 660 So.2d 901 (Fla.1996). As we have noted, an action for battery also lies where the patient consents to one type of surgery, but the physician performs a substantially different surgery from that for which the consent was obtained. Howard, supra, 172 N.J. at 550, 800 A.2d 73. A battery action is also proper where a patient consents to the surgery being performed by one doctor, but the surgery is performed by another. See id. at 551-52, 800 A.2d 73 (commonly referred to as "ghost surgery"). "It is immaterial to the issue of battery that . . . the operation was not negligently performed." Pugsley v. Privette, 220 Va. 892, 263 S.E.2d 69, 75 (1980); Perna, supra, 92 N.J. at 463, 457 A.2d 431 (nonconsensual operation is battery even if skillfully performed).
When a patient gives limited or conditional consent, a doctor has committed a battery if the evidence shows that the doctor acted with disregard of the consent given and thus exceeded its scope. Duncan v. Scottsdale Med. Imaging, Ltd., 205 Ariz. 306, 70 P.3d 435, 440 (2003); Murphy, supra, A-3172-03 (slip op. at 15). Consent is vitiated wherever the "nature and quality," Hogan, supra, 660 So.2d at 353, of the surgery performed is "substantially different," Howard, supra, 172 N.J. at 550, 800 A.2d 73, from the one to which the patient consented. Simply put, if the condition a patient places on his consent to a surgical procedure is material, and that condition is not fulfilled, the surgery is rendered a battery, just as if the doctors had not obtained the patient's consent in the first instance.
Thus, here, if plaintiff can prove that the non-use of cadaver bone was a material condition of his consent to the surgery, that defendants agreed not to use cadaver bone, and that they violated the condition, the surgery became a battery. That said, the question becomes the extent to which plaintiff may be compensated for that battery  whether for the entire first operation and its residuals, or, as the trial judge concluded, merely for the insertion of the cadaver bone and its consequences.
Generally, in the case of a nonconsensual surgery, a patient-plaintiff may recover for all injuries proximately caused by the mere performance of the surgery, whether the result of negligence or not. Perna, supra, 92 N.J. at 460-61, 457 *687 A.2d 431. Damages can include an award for mental anguish, and because battery connotes an intentional invasion of another's rights, punitive damages may also be assessed in appropriate cases. Id. at 461, 457 A.2d 431. Even if harmless, a battery entitles a plaintiff-patient to at least nominal damages. Id. at 460, 457 A.2d 431.
In a battery born of the breach of a conditional consent, damages are generally available for the excess harm caused by the specific breach. According to the Restatement, "[i]f the actor exceeds the consent, [the consent] is not effective for the excess." Restatement (Second) of Torts § 892A (1979); see also Piedra v. Dugan, 123 Cal.App.4th 1483, 21 Cal. Rptr.3d 36, 49 (2004) ("consent does not protect the actor from liability for the excessive act" (emphasis added)); Ashcraft v. King, 228 Cal.App.3d 604, 278 Cal.Rptr. 900, 902-04 (1991) (same). For example, damages for the act that exceeded the consent may be separable from those damages arising out of the operation for which the doctor had obtained consent in a situation where a plaintiff consented to one procedure, and while performing that procedure, the surgeon performed an additional procedure. See Kinikin v. Heupel, 305 N.W.2d 589, 593 (Minn.1981) (giving example of surgeon performing mastectomy during exploratory surgery).
Consistent with that line of reasoning, here, the trial judge concluded that the "excessive act" was the insertion of cadaver bone, and he consequently held that battery damages could only be recovered to the extent that they resulted directly from the use of that material. In part, we agree with that holding. To the extent that the jury can segregate the harm plaintiff suffered from the use of cadaver bone specifically from the harm caused by the operation generally, damages based simply on the excessive act may be appropriate.
But, that does not end the analysis. The Law Division ruling leaves open the question of what damages plaintiff will be entitled to recover if the jury is unable to distinguish between the harm he suffered from the use of cadaver bone and the harm he sustained from the operation itself. Though no case has directly addressed this issue, the answer to the question is informed by the principles espoused in the Restatement  where "the harm caused by the excess is severable from that resulting from the privileged act, the actor is . . . liab[le] only for the excess," but where "it is impossible as a practical matter to sever the harm resulting from the excess from that caused by [the] permitted act, the actor is subject to liability for the entire harm." Restatement (Second) of Torts § 892A comment h (1979). These principles are applicable here. Accordingly, if the jury is unable to distinguish between the harm plaintiff suffered from the use of cadaver bone and the harm he sustained from the operation itself, the jury may award him all damages arising out of the surgery as if he had not given his consent to defendants to perform the operation in the first instance.
Such a result is also consistent with the Court's decision in Perna, supra, which provides authority for a broad range of damages for a plaintiff who is subject to a battery at the hands of a physician. The Court said:
Under a battery theory, proof of an unauthorized invasion of the plaintiff's person, even if harmless, entitles him to nominal damages. The plaintiff may further recover for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not. If an operation is properly performed, albeit by a surgeon *688 operating without the consent of the patient, and the patient suffers no injuries except those which foreseeably follow from the operation, then a jury could find that the substitution of surgeons did not cause any compensable injury. Even there, however, a jury could award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent. Furthermore, because battery connotes an intentional invasion of another's rights, punitive damages may be assessed in an appropriate case.
[Perna, supra, 92 N.J. at 460-61, 457 A.2d 431 (citations omitted) (emphasis added).]
Perna thus instructs that, depending upon the particular circumstances of the case, a jury has a range of choices available to it in considering a damage award, from a token award of nominal damages, to damages "for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not"; the jury may also choose to award punitive damages. Ibid.
Applying those precepts here, if the jury determines that defendants committed a battery, and decides to award more than nominal damages, and it is able to segregate the harm from the use of cadaver bone from the damages flowing from the operation generally, it may award damages solely for the excess harm plaintiff suffered by use of cadaver bone. If, however, the jury is unable to distinguish the harm caused by the use of cadaver bone from that caused by the surgery in general, the jury may, but is not required to, award plaintiff damages for all of the injuries he suffered as a result of the operation. Bendar v. Rosen, 247 N.J.Super. 219, 233, 588 A.2d 1264 (App.Div.1991) (issue of severability of injuries is for the jury).
We also conclude that defendants shall bear the burden to segregate the damages caused by the excessive act from those resulting from the surgery in general. While not directly analogous, we liken defendant doctors' obligation here to that of a defendant in a medical malpractice case where the plaintiff's preexisting injuries are aggravated by the doctor's tortious conduct. In such a case, the burden to allocate the plaintiff's damages falls on the defendant. Verdicchio v. Ricca, 179 N.J. 1, 37, 843 A.2d 1042 (2004) (citing Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974)). As the Court in Fosgate, supra, has observed,
where . . . malpractice or [another] tortious act aggravates a preexisting . . . condition, the innocent plaintiff should not be required to establish what expenses, pain, suffering, disability or impairment are attributable solely to the malpractice or tortious act, but that . . . burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are.
[66 N.J. at 272-73, 330 A.2d 355.]
While this case does not strictly implicate the aggravation of a preexisting injury, defendants, as the culpable parties, should be responsible to demonstrate a reasonable basis to parse out the damages plaintiff suffered by reason of the implantation of cadaver bone in his spine from the disability plaintiff incurred from the surgery in general. If defendants are unable to do so, plaintiff may recover for all of the harm he suffered arising from the mere performance of surgery. See Restatement *689 (Second) of Torts § 892A comment h (1979).
If we assume that the testimony in the retrial will generally reflect that presented in the first trial, other factors the jury may consider in deciding damages include whether, if defendants had refused to perform the first surgery without using cadaver bone, plaintiff would have had another doctor, who would not use cadaver bone, perform the surgery; and, whether plaintiff would have undergone a second surgery to have the cadaver bone removed even if the first surgery had not failed. The jury may also consider that the failure of the fusion was a known risk of the surgery, and that the use of cadaver bone did not cause the surgery to fail.
We recognize that the measure of damages under the unique circumstances of this case may be difficult to determine. Yet, courts routinely invest juries with substantial discretion to decide what a reasonable person would consider adequate and just damages under all of the circumstances. See Model Jury Charges (Civil), 6.11F, "Damages-Personal Injuries; Disability, Impairment, Loss of the Enjoyment of Life, Pain and Suffering" (Dec. 1996). We are confident that the jury here can exercise its charge, as juries do in any situation where a plaintiff is seeking noneconomic damages for personal injuries suffered as a result of a defendant's conduct.

B. Breach of Contract
Next, we address plaintiff's claim for breach of contract damages. In our prior opinion, we concluded that plaintiff had a viable breach of contract claim against defendants. We said:
Generally, when a claim arises out of a doctor's failure to provide appropriate medical care, the cause of action is malpractice. In an appropriate case, however, where the doctor has made a special agreement to provide medical services, the action may be for breach of contract.
Here, plaintiff claims this is such an appropriate case. He does not allege the doctors failed to provide appropriate medical care. He asserts, instead, that they breached their agreement with him as to how they would perform one of the material elements of the operation.
To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result. According to plaintiff's version of the facts, defendants agreed to perform a fusion on plaintiff's spine using bone from plaintiff's hip, and agreed not to use cadaver bone; and they would be paid for that operation. No dispute exists that defendants used cadaver bone, rather than bone from plaintiff's hip. And, while the trial court ruled that as a matter of law the use of cadaver bone was not a material breach of defendants' agreement to perform a spinal fusion, we find that giving plaintiff all appropriate inferences on a motion to dismiss, that question more appropriately belonged to the jury.
[Murphy, supra, A-3172-03 (slip op. at 8-10) (internal citations omitted).]
Accordingly, if the jury concludes that defendants breached their agreement with plaintiff, it must then decide whether, under all of the circumstances, compensation for the breach is warranted.
In the first trial, the judge, in determining that plaintiff could not prove damages based on a breach of contract theory, ruled as a matter of law that the use of cadaver bone was not a material breach of defendants' agreement to perform a spinal fusion. Murphy, supra, A-3172-03 *690 (slip op. at 11). We disagreed, concluding that was a question for the factfinder, not the court. Ibid.; see Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J.Super. 275, 286, 723 A.2d 976 (App. Div.1998) (whether a breach is material is a jury question). We add here that even if the breach was not material, that only bears upon the quantum of damages, as even a nonmaterial breach of a contract may be compensable. See Miller v. Mills Constr., Inc., 352 F.3d 1166, 1172 (8th Cir.2003); City of Miami Beach v. Carner, 579 So.2d 248, 254 (Fla.Dist.Ct.App.1991); 23 Williston on Contracts § 63:3 (Lord ed.2002).
Next, then, we consider the breadth of damages available to plaintiff if he succeeds in his breach of contract claim. In addressing this issue in our prior opinion, we saw "no reason to depart from the traditional model for breach of contract damages, which permits a plaintiff to recover for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract." Murphy, supra, A-3172-03 (slip op. at 10-11) (internal quotations omitted). That is, compensatory damages are intended to compensate the injured party for loss caused by the breach by putting the injured party in as good a position as it would have been in had the performance been rendered as promised. Donovan v. Bachstadt, 91 N.J. 434, 444, 453 A.2d 160 (1982); see also Tarr v. Ciasulli, 181 N.J. 70, 92, 853 A.2d 921 (2004) (quoting the trial judge, who noted that "[c]ompensatory damages are intended to make a litigant whole . . . no more, no less"). We continue to adhere to that proposition.
That broad proposition, however, has been found in other jurisdictions to be inapplicable in the context of a breach of contract claim by a patient against his or her doctor. For example, in New York, breach of contract damages are restricted to economic damages, i.e., expenditures for "nurses and medicines or other damages that flow from the breach." Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330, 332 (1955). On the other hand, some jurisdictions permit recovery of the full panoply of damages, including recovery for mental anguish, pain and suffering. Sullivan v. O'Connor, 363 Mass. 579, 296 N.E.2d 183, 188-89 (1973); Stewart v. Rudner, 349 Mich. 459, 84 N.W.2d 816, 823-24 (1957). We find the analysis in Sullivan to be instructive.
There, the patient obtained a jury verdict against the defendant surgeon for a breach of contract with regard to an operation the surgeon performed on the patient's nose. 296 N.E.2d at 184. Rather than achieving the result the surgeon had promised, the surgery left the plaintiff disfigured. Ibid.
The plaintiff sued her doctor, alleging medical malpractice and breach of contract. Ibid. The jury returned a verdict for the defendant on the malpractice claim, but found for the plaintiff on the contract claim. Ibid. In discussing what damages were appropriate in a breach of contract action by a patient against her doctor, the Massachusetts Supreme Court recognized that some states limited recovery for breach of contract, precluding recovery for pain and suffering. Id. at 189. The court rejected that position, however, holding that the plaintiff was not confined to recovery for out-of-pocket expenditures, but "was entitled to recover also for the worsening of her condition, and for the pain and suffering and mental distress involved" as a result of the surgery, including damages from a subsequent surgery that was necessary to attempt to correct the deformity caused by the two prior operations performed by the defendant. Id. at 189. Relying on the Restatement of *691 Contracts § 341 and comment a to that provision, the court concluded that
no general rule barr[ed] such items of damage in actions for breach of contract. It is all a question of the subject matter and background of the contract, and when the contract calls for an operation on the person of the plaintiff, psychological as well as physical injury may be expected to figure somewhere in the recovery, depending on the particular circumstances.
[Id. at 188-89.]
The court's reasoning is persuasive. In New Jersey, as we have observed, the traditional model for breach of contract damages permits a plaintiff to recover "for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract." Model Jury Charges (Civil), 6.18A, "Damages-Breach of Contract" (June 1983). And here, because plaintiff's losses from the doctors' alleged breach of contract include personal injuries, we see no sound reason to limit his recovery to economic loss.
In arriving at this conclusion, we do not write on a clean slate. We have previously indicated that no material difference exists between different types of claims seeking relief for conduct proximately causing personal injuries, irrespective of whether the act forming the basis for the cause of action is a breach of a duty defined by contract law or a breach of a duty defined by tort law. Dunn v. Praiss, 271 N.J.Super. 311, 314, 638 A.2d 875 (App. Div.1994), rev'd on other grounds, 139 N.J. 564, 656 A.2d 413 (1995). We concluded in Dunn that, for purposes of contribution, a breach of a contractual duty proximately causing personal injury may "be balanced against the negligence of another party so that their percentage responsibilities can be assessed . . . [in terms of] comparative fault." Id. at 324, 638 A.2d 875.
In Dunn, the patient's administratrix filed suit against a number of doctors who failed to diagnose the testicular cancer that ultimately caused her husband's death. Id. at 314-15, 638 A.2d 875; Dunn v. Praiss, 256 N.J.Super. 180, 185, 606 A.2d 862 (App.Div.1992), cited in Dunn, supra, 271 N.J.Super. at 315 n. 1, 638 A.2d 875, certif. denied, 130 N.J. 20, 611 A.2d 657 (1992). In addition to bringing medical malpractice actions, the plaintiff also sought recovery for breach of contract. Dunn, supra, 256 N.J.Super. at 186, 606 A.2d 862. In determining whether the right to proceed on the contractual claim could be a basis for a right of contribution vis-à-vis the malpractice claims, we discussed the appropriateness of an apportionment by examining whether the claim sounded in contract or tort. Dunn, supra, 271 N.J.Super. at 322-24, 638 A.2d 875. In finding "no reason not to apportion responsibility based upon any civil wrong, including a breach of contract, that proximately causes a personal injury," we observed that:
The line between a breach of contract and a tort is often hazy. A breach of a contractual duty which is a proximate cause of a personal injury can easily be balanced against the negligence of another party so that their percentage responsibilities can be assessed and contribution directed as comparative fault. This is most clearly seen in contractual breach of warranty claims where the similarity to claims of negligence and strict liability has been recognized by the courts[.] In fact the Legislature in N.J.S.A. 2A:58C-1 and 2 has combined claims based upon contractual warranty, strict liability in tort and negligence in a single cause of action. We see nothing in New Jersey law that is hostile to such apportionment.

*692 [Id. at 324, 638 A.2d 875 (internal citations omitted).]
The Supreme Court agreed with our analysis, holding that, for purposes of contribution, it is appropriate to apportion responsibility between a negligence claim and a breach of contract claim alleged to have proximately caused personal injuries. Dunn, supra, 139 N.J. at 577-78, 656 A.2d 413.
Consequently, we conclude that no matter how we label defendants' alleged fault here, whether breach of contract or battery, if plaintiff sustained personal injuries as a result of that fault, the jury may award damages for all of plaintiff's injuries proximately caused by that conduct. That award may be tempered, however, depending upon the resolution of the issue of "excess" damages, as per our analysis of the damages recoverable for plaintiff's battery claim, supra, which is equally applicable to the measure of damages available for the breach of contract claim.
In determining whether to award damages for breach of contract, and if so, how much, the jury may consider the same factors we discussed with regard to its consideration of damages for battery: that plaintiff may have required a second surgery to have the cadaver bone removed even if the first surgery had not failed; that he may have had another doctor perform the back surgery if defendants had refused to refrain from using cadaver bone; and that the failure of the fusion was not a result of the use of the cadaver bone, but was a known risk of the surgery. And, as we concluded in our prior opinion, damages for breach of contract may not duplicate those for the battery cause of action. Murphy, supra, No. A-3172-03 (slip op. at 21).

C. Per Quod Claim
Finally, we examine whether the trial court erred in holding that plaintiff Marilyn Murphy could not raise a per quod claim derivative of plaintiff's breach of contract action. In general, a per quod claim includes the right of a husband or wife to receive compensation for loss of affection, comfort, companionship, society, assistance and sexual relations lost as a result of the other's personal injuries. Dan B. Dobbs, The Law of Torts § 310 at 841-43 (2001).
In New Jersey, no court has addressed whether a per quod claim is available to the spouse of a plaintiff who has suffered personal injuries as a result of a breach of contract. Nevertheless, given that the concept of fault is a component of both of plaintiff's causes of action, one sounding in tort and the other in contract, each resulting in personal injuries, we see no reason why a per quod claim should be permitted for one and not the other. "Compensation should not be dependent on what label we place on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested." Pickett v. Lloyd's, 131 N.J. 457, 470, 621 A.2d 445 (1993). So long as the breach of the contractual duty is a proximate cause of a personal injury, "[t]he nature of the wrongdoer's conduct is not particularly relevant." Dunn, supra, 139 N.J. at 577-78, 656 A.2d 413. Thus, if plaintiff is successful in recovering damages for his claim that defendants breached their contract with him, we see no reason why Marilyn Murphy's derivative claim should be precluded.
We consequently reverse and modify the November 17, 2006 order of the trial court and remand for additional proceedings consistent with this opinion.
NOTES
[1] All references in this opinion to plaintiff are to David Murphy.