**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2856
_____

THERESE FLAHERTY-WIEBEL,

Appellant

v.

MORRIS, DOWNING & SHERRED;
DAVID L JOHNSON

On Appeal From the United States District Court
for the District of New Jersey
(07-cv-3150)
District Judge:  Honorable Stanley R. Chesler

Submitted Under Third Circuit LAR 34.1(a)
February 25, 2010

Before: CHAGARES, STAPLETON, and LOURIE,[*] Circuit Judges.

(Filed June 10, 2010)
_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

 Plaintiff Therese Flaherty-Wiebel ("Flaherty") appeals from the District Court's

_____

[*]The Honorable Alan D. Lourie, Circuit Judge for the United States Court of
Appeals for the Federal Circuit, sitting by designation.

final order dismissing this action for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). We will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. Unless otherwise noted, these facts are derived from the First Amended Complaint filed February 12, 2009. Appendix ("App.") 23-52. In March 1998, Flaherty became engaged to be married to Paul Wiebel ("Wiebel"). At the time, Flaherty lived in New York City, and Wiebel lived in Bernardsville, New Jersey. Since Flaherty was reluctant to give up her home in New York City, Wiebel suggested that they purchase a multi-tenant property in New York City that could serve as Flaherty's residence and provide rental income. Flaherty found a townhouse located at 50 West 86th Street, New York, New York (the "Property"), which contained several residential units and commercial spaces. Flaherty thereafter rented an apartment at the Property, which she made her residence. Wiebel negotiated the purchase of the Property and created an entity known as 50 West 86th Street, LLC (the "Entity") to purchase the Property. On February 18, 1999, the Entity purchased the Property.

David Johnson, Esq., of the law firm Morris, Downing & Sherred, LLP, was a long-time friend and business associate of Wiebel. At Wiebel's request, Johnson drafted a will, power of attorney, and health care directive for Flaherty. He forwarded drafts of these documents to Flaherty on February 22, 1999. In addition, in October 1999, Johnson and his law firm performed preliminary work regarding a personal injury that Flaherty

2

had sustained, but Flaherty decided not to pursue the matter.

Flaherty and Wiebel were scheduled to be married on September 25, 1999, but on August 26, 1999, Flaherty ended their engagement. Flaherty and Wiebel then became engaged for a second time on April 21, 2001, with plans to be married on September 1, 2001. In August 2001, Wiebel presented Flaherty with a pre-nuptial agreement. Wiebel told Flaherty that Johnson and his law firm had drafted the document as Wiebel's attorneys and that she should not contact them about the agreement. Flaherty acknowledges that she was represented by separate counsel during the negotiation of the pre-nuptial agreement. See Flaherty Reply Br. 14.

The pre-nuptial agreement stated that Flaherty owned 49 percent of the Entity and that Wiebel owned 51 percent of the Entity. It provided that once Flaherty and Wiebel were married, Wiebel would give Flaherty an additional 1 percent interest, such that they would each own 50 percent of the Entity. In fact, Wiebel owned 99 percent of the Entity, and the remaining 1 percent was owned by Wiebel's son. On August 28, 2001, Flaherty executed the pre-nuptial agreement. Flaherty and Wiebel were married on September 1, 2001.

On May 31, 2005, Wiebel filed a complaint for divorce. Flaherty and Wiebel were divorced on November 8, 2006, at which time they signed a Property Settlement Agreement. Flaherty alleges that she was disadvantaged in the divorce negotiations because the pre-nuptial agreement misrepresented her ownership interest in the Entity.

Flaherty filed a Complaint in District Court against Johnson and the law firm of

3

Morris, Downing & Sherred (collectively the "defendants"). On January 12, 2009, the District Court granted the defendants' first motion to dismiss, dismissing the Complaint without prejudice and granting Flaherty leave to amend the Complaint. Flaherty filed the First Amended Complaint on February 12, 2009. On June 2, 2009, the District Court granted the defendants' second motion to dismiss, dismissing the case with prejudice.

On June 23, 2009, Flaherty timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's dismissal of an action pursuant to Rule 12(b)(6). Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 302 (3d Cir. 2008). In deciding a motion to dismiss, courts generally must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.

Flaherty argues that the District Court erred by dismissing her complaint for failure

4

to state a claim. She presents several potential theories of liability. First, she argues that the defendant committed legal malpractice through alleged violations of the New Jersey Rules of Professional Conduct. Second, she asserts that the defendants breached duties owed by attorneys to non-clients through alleged misrepresentations regarding the pre-nuptial agreement. Third, she claims that the defendants breached their contract with Flaherty. We agree with the District Court that Flaherty has failed to advance a viable theory of liability under any of these potential causes of action.

A.

Flaherty argues that District Court erred by dismissing her claims based on alleged violations of the New Jersey Rules of Professional Conduct. New Jersey law[1] does not recognize an independent cause of action for the violation of the Rules of Professional Conduct, but violations of these rules may be used to support a claim of legal malpractice. Baxt v. Liloia, 714 A.2d 271, 275-76 (N.J. 1998). New Jersey courts have defined legal malpractice as "negligence relating to an attorney's representation of a client." Sommers v. McKinney, 670 A.2d 99, 103 (N.J. Super. Ct. App. Div. 1996). The elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060, 1070

_____

[1]The parties agree that New Jersey law applies in this diversity action.

5

(N.J. 1996)).

In this case, Flaherty has not alleged facts that support the existence of an attorney-client relationship with the defendants. As Flaherty admits, Wiebel notified Flaherty that the defendants represented Wiebel and drafted the documents as Wiebel's attorneys, and that Flaherty should not contact the defendants about the pre-nuptial agreement. See App. 33 (First Am. Compl. ¶ 73). Moreover, Flaherty was represented by her own counsel during the negotiation of the pre-nuptial agreement. See Flaherty Reply Br. 14. Although the defendants had previously drafted estate planning documents for Flaherty, see App. 27-28 (First Am. Compl. ¶¶ 37-40), Flaherty's allegations do not establish an attorney-client relationship with respect to the pre-nuptial agreement. Since Flaherty was not represented by the defendants during the negotiation of the pre-nuptial agreement, she cannot sustain a claim for legal malpractice based on their performance in drafting this agreement. The District Court properly dismissed Flaherty's claims based on alleged violations of the New Jersey Rules of Professional Conduct and legal malpractice.

B.

Flaherty also argues that the District Court erred by dismissing her claim based on the limited duties owed by attorneys to non-clients. Under New Jersey law, "attorneys may owe a limited duty in favor of specific non-clients." Petrillo v. Bachenberg, 655 A.2d 1354, 1357 (N.J. 1995). Specifically, "'a member of the bar owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity.'" Id. at 1358 (quoting Albright v. Burns, 503 A.3d 386, 389 (N.J.

6

Super. Ct. App. Div. 1986)). This duty to non-clients is limited to "situations in which the lawyer intended or should have foreseen that the third party would rely on the lawyer's work." Id. at 482. "If the attorney[']s actions are intended to induce a specific non-client[']s reasonable reliance on his or representations, then there is a relationship between the attorney and the third party." Banco Popular N. Am., 876 A.2d 253, 265 (N.J. 2005). "Contrariwise, if the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship to substitute for the privity requirement." Id.

In Petrillo, for example, the Supreme Court of New Jersey held that an attorney representing the seller of property has a duty not to provide misleading information regarding the property to potential buyers who the attorney knew, or should have known, would rely on the information. 655 A.2d at 1355. The court reasoned that "like certified public accountants or other professionals involved in commercial transactions, a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services." Id. at 1360. To determine whether an attorney may be liable to a third party for statements made in a document the attorney has prepared, the court must "ascertain the purpose" of the document. Id. at 1361. "The objective purpose of documents such as opinion letters, title reports, or offering statements, and the extent to which others foreseeably may rely on them, determines the scope of a lawyer's duty in preparing such documents." Id.

We agree with the District Court that the limited duty owed by attorneys to non-

7

clients recognized in Petrillo does not extend to the circumstances alleged in this case. Defendant Johnson drafted the legal agreement memorializing the agreement reached between Weibel and Flaherty. As the District Court reasoned:

> [A]n attorney who puts into writing an agreement between two parties does not vouch for the representations either party has made to the other. The attorney only puts into writing the representations that the parties intend to make to each other. The act of drafting does not make the attorney responsible for the accuracy of the statements placed on paper.

App. 7. Unlike the property reports compiled by the defendant in Petrillo, the "objective purpose" of the pre-nuptial agreement drafted by Johnson was not to induce Flaherty into relying on the representations it contained. Petrillo, 655 A.2d at 1361. Rather, the purpose of this document was to memorialize the party's mutual agreement. The District Court properly dismissed Flaherty's claim based on the defendant's alleged breach of the duty owed to non-clients.

## C.

Flaherty's final argument is that the District Court erred by dismissing her claim for breach of contract. Under New Jersey law, to state a claim for breach of contract, the plaintiff must allege facts establishing that "the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). In this case, Weibel has alleged merely that she "entered into a contract with Defendants when she retained Defendant Johnson and Defendant Firm to act as her attorneys and represent her for estate planning purposes." App. 50 (First Am. Compl. ¶

8

179).  She asserts that "Defendants actions and inactions constituted a breach of the contract entered into by them with Plaintiff," App. 51 (First Am. Compl. ¶ 185), but she has not identified any specific ways in which the defendants breached their obligations under the contract to provide estate planning services.  The District Court properly dismissed her breach of contract claim.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.