NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2228
No. 12-2357
_____

GF PRINCETON, L.L.C.,

Appellant in 12-2357/Cross-Appellee in 12-2228

v.

HERRING LAND GROUP, L.L.C.,

Appellant in 12-2228/Cross-Appellee in 12-2357
_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 3-06-cv-02585)
District Judge: Hon. Mary L. Cooper
_____

Submitted under Third Circuit LAR 34.1(a)
February 12, 2013

Before: HARDIMAN and ALDISERT, Circuit Judges, and STARK,* District Judge.

(Filed: February 27, 2013)

_____

OPINION OF THE COURT
_____

---

* Honorable Leonard P. Stark, Judge of the United States District Court for the District of Delaware, sitting by designation.

STARK, <u>District Judge</u>.

In these consolidated appeals, both parties appeal aspects of the district court's determinations following a two-step bench trial. Because we find no error, we will affirm.

I

As we write primarily for the parties, who are familiar with the record, we limit our discussion of the factual and procedural background to only what is necessary for our resolution of the issues on appeal.

By agreement dated December 27, 1985 (the "Ground Lease"), non-parties New Jersey National Bank ("NJNB") and Textron Financial-New Jersey, Inc. ("Textron") agreed that NJNB, as Ground Lessor, would lease to Textron, as Ground Lessee, certain land and improvements. As pertinent here, the Ground Lease applied to land known as 370 Scotch Road, Ewing, New Jersey (the "Subject Property"). Specifically, the Subject Property consisted of approximately 16 acres, improved with two buildings having approximately 179,000 square feet of office space (the "Improvements"). NJNB and Textron entered into a second lease agreement (the "Improvements Lease" and, collectively with the Ground Lease, the "Leases"), also dated December 27, 1985.

In January 2006, Appellant/Cross-Appellee, Herring Land Group, L.L.C. ("Herring"), became successor to NJNB under the Leases. Separately, in December 2007, Appellee/Cross-Appellant GF Princeton, L.L.C. ("GF Princeton"), became successor to Textron under the Leases and acquired the two buildings on the Subject Property.

Beginning on January 14, 2006, Paragraph 4 of the Ground Lease called for the Ground Lessee to pay the Ground Lessor the fair market value of the Subject Property,

2

determined in five-year intervals (the "Ground Rent"). If the Ground Lessee and Ground Lessor were not able to reach an agreement on the fair market value within sixty days, Section 16 of the Improvements Lease provided for an appraisal process. Specifically, Section 16 provides that:

> . . . Lessor and Lessee shall each appoint an appraiser within 10 days of their failure to agree, and the fair market value shall be determined by the two appraisers so appointed within 45 days of appointment. If the two appraisers so appointed shall be unable to agree upon fair market value, fair market value shall be the average of the amounts determined by the appraisers if the greater of such amounts is no more than 105% of the lesser of such amounts. If the greater of such amounts shall exceed 105% of the lesser of such amounts, a determination shall be made by a third appraiser, who shall be selected within 10 days by the two appraisers appointed by the parties hereto. Such determination shall be made by the third appraiser within 45 days of his appointment. In such event, fair market value shall be in the average of the two closest appraised amounts . . . .

(JA12)

On June 8, 2006, Textron filed suit against Herring in the District of New Jersey, seeking a declaratory judgment as to the proper methodology to be used by the appraisers in setting the Ground Rent for the period from January 14, 2006 to January 14, 2011.[1] Prior to filing suit, Textron had provided Herring with an appraisal (the "Textron Appraisal"), but Herring had chosen not to provide an appraisal. On August 1, 2006, Herring answered Textron's complaint and filed counterclaims, including one seeking specific enforcement of the appraisal provisions of the Ground Lease. Subsequently, in an amended complaint, Textron added a claim for breach of contract, based on Herring's

---

[1]The parties are presently engaged in litigation in the New Jersey Superior Court, Chancery Division, General Equity Part, Mercer County, relating to the appraisal period from January 14, 2011 to January 14, 2016.

failure to deliver an appraisal. Eventually, on October 2, 2007, in connection with discovery in the litigation, Herring provided Textron an appraisal (the "Herring Appraisal").

In February 2008, GF Princeton moved to substitute for Textron, as GF Princeton had assumed all of Textron's rights and interests under the Ground Lease. In October 2008, after considering Herring's opposition, the district court substituted GF Princeton for Textron. Shortly thereafter, GF Princeton moved for leave to file a second amended complaint. The district court denied this request.

In February 2009, GF Princeton entered into an agreement to lease a portion of the Improvements to Scotch Road Trust, L.L.C., for use and occupancy by Vantage Communications. Pursuant to this lease agreement, GF Princeton recognized limited revenue between February 2009 and January 2011.

Trial proceeded in two phases. During Phase I, held between December 2010 and March 2011, the district court heard evidence regarding the parties' dispute as to the correct methodology for determining the Ground Rent for the 2006 to 2011 period. In order to gain an understanding of the appraisal process, the Court ordered the parties' appraisers to select a third appraiser. They selected Peter Korpacz, who prepared his own appraisal (the "Korpacz Appraisal").

On June 29, 2011, the district court issued an extensive opinion. It determined that the appraisal process for the 2006 to 2011 period should be completed, the Textron Appraisal used the correct methodology, and the Herring Appraisal had used an improper methodology. The district court directed Herring to provide a new appraisal. On July 19, 2011, Herring designated a new appraiser and, on September 9, 2011, Herring delivered to GF Princeton its revised appraisal (the "Herring Revised Appraisal").

4

Phase II of the trial was held in August and September 2011. It concerned GF Princeton's claim for breach of contract and Herring's counterclaim for rent due under the Ground Lease. On March 30, 2012, the district court issued another extensive opinion, dismissing both parties' claims. These appeals followed.

## II

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction to review the district court's entry of final judgment pursuant to 28 U.S.C. § 1291.

We review the district court's factual findings following trial for clear error and its conclusions of law de novo. See Sec'y of Labor v. Doyle, 675 F.3d 187, 199 (3d Cir. 2012). We review the district court's evidentiary decisions, refusal of leave to amend, and weighing of the equities for abuse of discretion. See Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002); Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001); Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc., 201 F.3d 231, 249 (3d Cir. 1999).

## III

Herring appeals the district court's denial of its claim for equitable relief, which seeks enforcement of the Ground Lease for the payment of Ground Rent. For the reasons discussed below, we will affirm the district court.[2]

---

[2]Herring seeks payment of annual Ground Rent due under the Ground Lease by GF Princeton for the 2006 to 2011 period. Specifically, Herring seeks judgment in the amount of $1,306,650, which is five years of annual rent as calculated by averaging the Textron Appraisal and the Korpacz Appraisal. Herring has agreed to waive its right to complete the appraisal process for 2006 to 2011, which would arguably allow it to submit the Herring Revised Appraisal, or possibly yet another new appraisal, to be factored into the determination of the annual Ground Rent.

5

In seeking specific performance of a contract, Herring had the burden of demonstrating: (i) the contract at issue is valid and enforceable; (ii) the terms of the contract are sufficiently clear, such that the court can determine, with reasonable certainty, each party's duties and the conditions under which those duties arise; and (iii) an order compelling performance would not be "harsh or oppressive." See Marioni v. 94 Broadway, Inc., 866 A.2d 208, 214-15 (N.J. Super. Ct. App. Div. 2005).[3] The district court concluded that Herring failed to meet its burden on the second prong, explaining: "When Herring filed the Counterclaim, the contractual terms at issue – that is, the appraisal process set forth by Paragraph 4 of the Ground Lease and Section 16 of the Improvements Lease – were not 'sufficiently clear' and 'reasonabl[y] certain[]', such that the Court could readily determine 'each parties' duties and the conditions under which' they arose." (JA56)

Herring insists that "[t]he question is not whether the terms were 'sufficiently clear' when [its] Counterclaim was filed, but whether the Court was ultimately able to determine the parties' duties after trial." (Herring Br. 19) (internal emphasis omitted) Herring adds that there was never uncertainty as to the parties' duties but, rather, uncertainty only as to the appraisal methodology for determining the Ground Rent.

Herring cites no authority for the proposition that the relevant time at which to assess the certainty of the contract terms is after trial, and we are not persuaded by its arguments. The Ground Lease was silent as to the appraisal methodology. Into this vacuum, Textron (later GF Princeton) provided an appraisal based on appraising the land as encumbered by the then-existing improvements. Herring, by contrast, provided an appraisal based on appraising the land as if it had been developed with a new, costly

---

[3]The parties agree New Jersey law governs the interpretation of the Leases.

6

development of an additional 400,000 square feet. As GF Princeton describes, "[i]t took the [District] Court four (4) years of discovery and approximately six (6) days of trial testimony from expert appraisers to sort through all of these issues and then . . . reject[] Herring's assertions as to methodology." (GF Princeton Br. 57) In seeking equity, it ill-behooves Herring to have contested the appropriate methodology under the Leases, placing before the district court a bona fide dispute requiring years of litigation to resolve, and then to proclaim that the appraisal methodology adopted by the district court – over Herring's vigorous objection – should be viewed as "reasonably certain."

Herring contends that the district court's decision "contravenes the purposes of the Declaratory Judgment Act," suggesting the district court treated the mere fact that Herring had to file its counterclaim as sufficient evidence of uncertainty to bar Herring's requested equitable relief. (Herring Br. 25) However, the district court did not rest its decision on uncertainty alone. The district court also found support for its refusal to order specific performance in other facts and equitable factors which, "taken together, . . . 'pour content' into [the] decision, because the parties have demonstrated that enforcing the parties' contract . . . would lie against the equities." (JA60) These other considerations included: (1) the Ground Rent dispute prevented Textron and GF Princeton from attracting tenants; (2) the only tenant Textron and GF Princeton secured was given concessions, including decreased rent and favorable contract terms; (3) GF Princeton bore all costs associated with the Subject Property; (4) GF Princeton's suit was delayed by eight months due to Herring's unsuccessful opposition to GF Princeton's motion to substitute; and (5) Herring's sole loss was its inability to collect Ground Rent.

Herring challenges the district court's determination that the parties' dispute made it nearly impossible for GF Princeton to attract tenants, which the district court based on

the testimony of Sab Russo, GF Princeton's real estate broker. Herring contends that the district court abused its discretion in permitting Russo's testimony, arguing that his statements were inadmissible hearsay. Whether a statement is hearsay is a legal question subject to plenary review. See United States v. Price, 458 F.3d 202, 205 (3d Cir. 2006). "If the district court correctly classifies a statement as hearsay, its application of the relevant hearsay exceptions is subject to review for abuse of discretion." Id.

> Russo testified as follows:
>> There was clearly, after a period of marketing this property, and it became well-known in the market that there was an issue with the ground rent on this property. When I first started with Textron, we followed the protocol on the lease, we got our appraisal done, and the idea was to get that issue behind us and establish a ground rent and be able to move on and know what we were marketing. Since we didn't really know what we were marketing, and the market was starting to understand that there was an issue there.

(JA5845-46) Russo's statement is his opinion as to customer motivations, including discussions he had with prospective and/or actual tenants. Testimony as to customer motivation is admissible as an exception to hearsay under Fed. R. Evid. 803(3). See Callahan v. A.E.V., Inc., 182 F.3d 237, 251-52 (3d Cir. 1999).

Herring's reliance on this Court's decision in Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1274 (3d Cir. 1995), in which we found error in the district court's admission of customer testimony elicited through plaintiff's employee, is unavailing. As we explained subsequently in Callahan, the error in Stelwagon arose from the facts that the customer testimony was being offered to prove the amount of business lost to a competitor, and that no non-hearsay evidence had been introduced to establish loss. See Callahan, 182 F.3d at 251-53. Here, in contrast to Stelwagon and analogous to Callahan, Russo's testimony was offered "for the limited purpose of proving customer

8

motive," not to prove an amount of actual loss. See Callahan, 182 F.3d at 252. That is, Russo's testimony went to whether tenants may have been discouraged from entering into transactions with GF Princeton as a result of the unresolved issues over the Ground Rent. Also, as in Callahan, GF Princeton corroborated its evidence of tenant motivation with non-hearsay evidence. For example, in order to secure its sole tenancy with Vantage Communications, GF Princeton had to make a number of concessions, including six months of free rent, a below-market security deposit, and an escape provision allowing Vantage Communications to terminate the lease nearly at will.

The district court did not abuse its discretion in permitting Russo's testimony. Nor has Herring demonstrated that the district court abused its discretion in any other respect in denying Herring equitable relief. Thus, we will affirm the district court's disposition of Herring's claims.

## IV

We now turn to the issues presented by GF Princeton in its appeal.

## A

The district court properly dismissed GF Princeton's breach of contract claim based on the timing of GF Princeton's filing. The district court's finding that Textron's filing of suit on June 5, 2006 tolled the time for Herring to submit an appraisal is not clearly erroneous,[4] as we are not left with a "definite and firm conviction that a mistake has been committed." United States v. Igbonwa, 120 F.3d 437, 440 (3d Cir. 1997). The "clearly erroneous" standard allows the reviewing court room "to consider whether there

---

[4]The parties agree that this issue is reviewed for clear error. Even if, alternatively, it is viewed as a matter of contract interpretation subject to de novo review, we would reach the same conclusion.

is enough evidence in the record to support the factual findings of the district court." Id. at 441.

Herring and Textron began negotiating the Ground Rent on January 25, 2006, and met on February 16, 2006 for further discussions. At the time, the parties advised each other as to their positions on the appraisal process they sought to apply: Textron would appraise based on the then-existing state of the Subject Property, while Herring would appraise based on the potential development of the Subject Property. The parties were not able to reach an agreement during their February meeting, and Textron engaged an appraiser who eventually prepared the Textron Appraisal. Thereafter, the parties continued to negotiate, discussing the Ground Rent during two telephone conference calls in March 2006 and again in two letters exchanged in May 2006.

In particular, by letter dated May 10, 2006, Textron's counsel advised Herring's counsel, "we are willing to continue settlement discussions only for an additional two (2) weeks from the date we send you the appraisal." (JA29) Herring believed the letter was a further attempt to resolve the dispute through negotiations; Herring did not interpret the letter as Textron's invocation of the Section 16 appraisal process. Then, on May 22, 2006, as the parties were still in discussions, Textron provided Herring with the Textron Appraisal. When the parties failed to reach an agreement within the two weeks after May 22, 2006 – that is, by June 5, 2006 – then, consistent with Textron's May 10 and 22 letters, negotiations were over. On June 7, 2006, Herring retained an appraiser, although it did not inform Textron it had done so.

Pursuant to the Section 16 of the Improvements Lease, Herring had a period of ten days from the date of the parties' "failure to agree" on the fair market value in which to appoint an appraiser. As Textron had concluded on June 5, 2006 that the parties failed to

10

agree, Herring had until June 15, 2006 to appoint an appraiser. Yet, Textron filed suit prematurely on June 8, 2006, a date on which Herring still had a week left to appoint its appraiser. On this basis, the district court concluded Herring did not breach the contract. We agree.

Contrary to GF Princeton's protestations, the district court's decision does not result in, as GF Princeton argues, "the wrongdoer [being] rewarded for its own misconduct." (GF Princeton Br. 26) Nothing in GF Princeton's lengthy briefing provides any reason to find Herring in breach of a contractual deadline that had not yet expired.

Moreover, the district court did not, as GF Princeton suggests, rule that the pendency of the litigation made it impossible for Herring to comply with the Ground Lease and provide its own appraisal. Instead, the district court found that it was reasonable for Herring, after being sued, to wait to produce its appraisal until after the district court determined the appropriate appraisal methodology, as this was the very dispute placed before the court by GF Princeton. (JA53) ("Without some resolution of the methodology question, appointing appraisers or producing appraisal reports would have been a fruitless endeavor in either May or June 2006.") Thus, we find no error in the district court's dismissal of GF Princeton's breach of contract claim.[5]

B

As we are affirming the district court's dismissal of GF Princeton's breach of contract claim, there is no need to reach GF Princeton's contention that the district court erred by not awarding GF Princeton affirmative damages. See Murphy v. Implicito, 920

_____

[5]GF Princeton argues that the district court failed to consider the "covenant of quiet enjoyment." For the same reasons Herring was not in breach of the contract, it also did not breach GF Princeton's right to quiet enjoyment.

11

A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); see also Weatherford v. Bursey, 429 U.S. 545, 564 n.3 (1977) (declining to assess damages where there is no liability). For the same reason, there is no need to address GF Princeton's lengthy challenges to the district court's decisions regarding damages evidence.

C

Finally, GF Princeton contends that the district court should have permitted it to file a second amended complaint, after GF Princeton was allowed into the case and substituted as plaintiff in October 2008. However, GF Princeton "stands in the shoes" of Textron. A party stepping into the shoes of its predecessor takes over the original litigant's position and decisions. See Brook, Weiner, Sered, Kreger & Weinberg v. Rankin, 53 F.3d 851, 852 (7th Cir. 1995); see also Adels v. Bierbach, 2011 WL 1457132, at *5 (M.D. Pa. Apr. 15, 2011) (stating that substituted party stands in shoes and assumes responsibility of original litigant). "Any other approach would make a shambles of litigation; a party could sell its interest or change its internal structure . . . and require the court to start the case from scratch." Brook, 53 F.3d at 852.

Magistrate Judge Bongiovanni denied GF Princeton's motion for leave to file a second amended complaint after weighing a number of factors. She began her analysis by noting that while motions for leave to amend are "freely given, there are limits to the Court's leniency." (JA546) GF Princeton sought to add new factual allegations, new claims for damages, and new causes of action. If the motion was granted, it would require the court to reopen fact discovery, which would undoubtedly delay resolution of the matter, increasing costs. GF Princeton had failed to show that Textron could not have filed the claims GF Princeton now proposed to add. While no trial date had yet been set, the case was otherwise ready for dispositive motions and had been pending for more than

12

a year when GF Princeton first sought to be added to the case. The district court did not abuse its discretion in affirming the Magistrate Judge's decision to deny leave to amend.

V

For the reasons stated, we will affirm the district court's judgment.