**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-2563 and 13-2564
_____

RED ROOF FRANCHISING, LLC

v.

ASVIN PATEL; ARUNA PATEL;
AA HOSPITALITY,

Appellants in No. 13-2563
_____

RED ROOF FRANCHISING

v.

ALPESH PATEL; ARUNA PATEL;
AA HOSPITALITY,

Appellants in No. 13-2564
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action Nos. 1-10-cv-04065 & 1-10-cv-04120)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2014

Before:  CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Filed: April 29, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Before us are consolidated appeals from two breach-of-contract cases, both of which stem from franchise agreements entered into by Appellants Aruna, Asvin, and Alpesh Patel, their closely held companies, and franchisor Red Roof Inns, Inc. and its corporate successor, Appellee Red Roof Franchising, LLC ("RRF"). In both cases RRF, the plaintiff, claims that Appellants breached a franchise agreement by failing to remit royalties. Appellants argue that RRF breached the franchise agreement first, thereby excusing or mitigating their own nonperformance. Appellants now seek relief from the District Court's orders granting summary judgment in favor of RRF on all claims. In both cases, we will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of these cases. Accordingly, we set forth only those details necessary to our analysis.

On August 23, 2002, Asvin and Aruna Patel entered into a 15-year franchise agreement with Red Roof Inns, Inc., pursuant to which they opened and operated a Red Roof Inn in Bellmawr, New Jersey. In 2005, Red Roof Inns, Inc. assigned its rights and obligations under the franchise agreement to Accor Franchising North America, LLC ("Accor"). In 2006, the Patels assigned their interest in the franchise agreement to their

2

closely held corporation, AA Hospitality ("AAH"), and simultaneously executed a personal guarantee as to AAH's obligations under the agreement.[1] On April 9, 2007, Aruna and Alpesh Patel,[2] operating by way of a second closely held corporation, AA Hospitality Northshore, LLC ("AAHN"), entered into another franchise agreement with Accor, this time for the operation of a Red Roof Inn in Duluth, Minnesota.[3] Again, the arrangement was bolstered by a personal guarantee. Later in 2007, Accor assigned its rights and obligations under the franchise agreements to RRF.

Under the franchise agreements, AAH and AAHN were required to pay monthly royalty fees to RRF or face monetary penalties. The agreements permitted RRF to terminate the relationship after providing notice of default and an opportunity to cure. The agreements also provided for liquidated damages in the event of premature termination.

Over the course of 2009, AAH fell into arrears with respect to the monthly royalty fees on the New Jersey location. On January 19, 2010, RRF mailed a "WRITTEN NOTICE OF DEFAULT AND NOTICE OF TERMINATION" to AAH and to the Patels. The letter offered an opportunity to cure the default by making full payment of

---

[1] We will refer to Aruna and Asvin Patel, along with AA Hospitality, Inc., as the "New Jersey Appellants."

[2] As noted by the District Court, it appears that Asvin Patel is the father of Alpesh Patel, and "[i]t remains unclear whether Aruna Patel is the same individual in both cases." (App. 60.) Any ambiguity in this regard is immaterial to our analysis.

[3] We will refer to Aruna and Alpesh Patel, along with AA Hospitality Northshore, LLC, as the "Minnesota Appellants."

3

the claimed fees before March 26, 2010, and stated that in the absence of such action, the franchise agreement would be terminated without further notice.

On April 20, 2010, having received no further payments, RRF sent a "Notice of Termination of Franchise Agreement," which stated that AAH and the Patels had failed to cure and that RRF considered the franchise agreement terminated. The notice instructed the franchisees to cease use of all Red Roof Inn signage and proprietary systems. RRF submitted evidence that even after the purported termination, AAH continued to operate the New Jersey business as a Red Roof Inn in violation of the terminated franchise agreement.

The Minnesota Red Roof Inn operated by the Patels eventually foundered as well. By the summer of 2010, AAHN had fallen behind with respect to royalty obligations for that location, and instead rebranded the facility as an "America's Best Value Inn." On July 2, 2010, RRF sent a letter stating it intended to terminate the agreement as of July 6, 2010.

In August 2010, RRF filed two complaints in federal court, one addressing the New Jersey franchise agreement, and the other, the Minnesota agreement. In both complaints, Count One stated a claim for damages for breach of the respective franchise agreements by the corporate franchisee; Count Two sought specific performance to terminate any continuing use of Red Roof Inn's intellectual property; and Count Three stated a claim for damages for breach of the guarantee by the Patels.

4

In response, Appellants raised affirmative defenses and filed counterclaims, most of which were predicated on allegations that RRF itself had breached the franchise agreements prior to any nonpayment. In the New Jersey case, the counterclaims included alleged violations of the New Jersey Franchise Practices Act ("NJFPA"), N.J. Stat. Ann. § 56:10-5, which sets forth, among other things, certain notice requirements for termination of a franchise agreement.

In October 2011, RRF sought partial summary judgment in both cases on its breach of contract claims and on all counterclaims. In opinions and orders entered on June 28, 2012, the District Court granted those motions. In opinions and orders dated March 28, 2013, the District Court denied Appellants' motions to reconsider and finalized the calculation of damages. On May 2, 2013, the Court entered judgment against the Minnesota Appellants in the amount of $208,794.05, App. 134, and against the New Jersey Appellants in the amount of $198,818.91, App. 17.

II.

The District Court had diversity jurisdiction over both cases under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Our review of a District Court's grant of summary judgment is plenary. *Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013). Summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

5

We first address the District Court's grant of summary judgment in favor of RRF and against the New Jersey Appellants in Case No. 13-2563. The parties agree that this case is governed by New Jersey law.

A.

To prove a breach of contract under New Jersey law, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (quoting *Murphy v. Implicito*, No. A–3172–03, 2005 WL 2447776, at *8–10 (N.J. Super. Ct. App. Div. Sept. 22, 2005)). The New Jersey Appellants conceded in the District Court that AAH failed to pay royalties due under the franchise agreement, (App. 35 n.3), and at no time have they challenged the validity of the personal guarantee.

Instead, the New Jersey Appellants argue that RRF's own material breaches of the franchise agreement excuse nonpayment and serve as a complete affirmative defense. We assume without deciding that a material breach by RRF, if proved, could give rise to an affirmative defense against RRF's own breach-of-contract claims.[4] Our review of the

---

[4] Relying on our holding in *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992), the District Court noted that where a franchisee alleges breach of contract by a franchisor, the franchisee is entitled to terminate the agreement in its entirety, or bring suit and continue performance; the franchisee may not, however, withhold royalties and continue to operate as usual. Here, Appellants had neither terminated the agreement nor sued for partial breach, and instead continued to hold their business out as a Red Roof Inn while no longer paying for that privilege. The District Court thus concluded that RRF's

6

record, however, indicates that the New Jersey Appellants have not produced evidence sufficient to create a genuine dispute of material fact on this point.

Although the New Jersey Appellants' submission is vague about which particular clauses in the 60-page franchise agreement and addendum they believe were breached, the essence of their claim is that RRF failed with respect to certain marketing obligations and maintenance of an electronic reservations system. *See* Appellants' Br. at 16–17. Section 3.3 of the New Jersey Franchise Agreement states that the franchisor "shall establish, maintain and administer an Accel Reservation System and a Marketing Program, subject to the provisions of Section 10 hereof." (Supp. App. 241). Section 4.3 provides that the franchisee is obligated to remit a monthly contribution for this purpose, which under Section 10.1 shall be used by the franchisor "in its sole discretion to

---

alleged breaches, even if supported by the evidence, failed as a matter of law to excuse Appellants' nonpayment.

Appellants contend that the holding of *Jiffy Lube* on this point was limited to the proposition that where a franchisee fails to pay royalties under a franchise agreement, the franchisor may be entitled to preliminary injunctive relief to prevent continuing abuse of the franchisor's mark. According to Appellants, *Jiffy Lube* took no position on whether the franchisee, as the defendant in a suit for damages, might be entitled to raise an affirmative defense based on the franchisor's alleged breach. *See Travelodge Hotels v. Honeysuckle Enter.*, 357 F. Supp. 2d 788, 797–98 (D.N.J. 2005) (distinguishing *Jiffy Lube* and holding that a material breach by the franchisor might excuse nonpayment of royalties by the franchisee under New Jersey law).

For the reasons stated below, we need not resolve this conflict to decide the cases before us.

7

develop, operate, support and/or enhance the Accel Reservation System" and "Marketing Programs for the System." (Supp. App. 252).

The New Jersey Appellants' only evidence that RRF failed to satisfy these obligations consists of an affidavit from Asvin Patel. As to the reservations system, Patel explains:

> The reservations system has been afflicted with defects and outages. During the last several years the system has been 'down' eight to nine times. The system simply failed. It was impossible for people to make and hotels to receive reservations during these outages. Some of these outages were for a day and a half at a time. The system became inconsistent and unreliable. Before the new franchisor took over, these problems did not occur.

(App. Vol. II 3.) Patel also alleges that RRF "failed to create any new advertising or marketing programs that generated new customers for the hotel," and failed to efficiently operate "certain advertising and market programs . . . with the expertise necessary to keep them vibrant and valuable." (*Id.* at 2.)[5]

We conclude that Patel's affidavit, without more, does not create a genuine dispute of material fact that would preclude summary judgment. An "affiant must ordinarily set forth facts, rather than opinions or conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985); *see also* Fed. R. Civ. P. 56(c)(4). "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie,*

---

[5] Appellants follow this affidavit with a series of unexplained and unreferenced exhibits, (Supp. App. 344–83), none of which have any apparent connection to a reservations system or the marketing efforts of RRF.

8

*McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)). Here, Patel describes marketing failures and intermittent system outages with a limited degree of factual detail. He provides only broad conclusions, however, as to an equally crucial element of the New Jersey Appellants' defense—to wit, the requirement that they "sustained damages as a result" of RRF's alleged breach. *Murphy*, 920 A.2d at 689. The New Jersey Appellants offer no firm data, or even estimates, regarding the total number or value of reservations lost due to the system's downtime, or the loss in revenue due to RRF's alleged failure to create new marketing programs. Without such facts it is impossible to discern whether RRF's alleged breaches were material, or instead merely *de minimis*.

In sum, the record is devoid of evidence that the New Jersey Appellants in fact suffered damages as a result of RRF's alleged contractual breaches. RRF, by contrast, has introduced uncontested evidence to satisfy its own burden regarding the breach-of-contract claims.[6] We therefore conclude that RRF is entitled to summary judgment on all counts in Case No. 13-2563. Accordingly, we will affirm the District Court's orders of June 28, 2012, March 28, 2013, and May 2, 2013 to the extent reflected above.

B.

---

[6] Because the New Jersey Appellants make no particularized argument with respect to the grant of summary judgment on Count Two, in which RRF sought specific performance for compliance with the post-termination provisions of the New Jersey franchise agreement, we will not address that topic separately.

9

The New Jersey Appellants also challenge the District Court's grant of summary judgment in favor of RRF as to their counterclaims for breach of contract. Even assuming without deciding that these claims are cognizable under the circumstances, they fail for the same reasons described above. The New Jersey Appellants have not provided evidence upon which a reasonable juror could find that RRF breached its obligations under the New Jersey franchise agreement and caused damages as a result. We will therefore affirm the District Court's orders of June 28, 2012 and May 2, 2013 to the extent that they granted summary judgment in favor of RRF on the New Jersey Appellants' counterclaims for breach of contract.

C.

Also among the counterclaims upon which the District Court granted summary judgment in Case No. 13-2563 were alleged violations of the NJFPA, N.J. Stat. Ann. § 56:10-5. On appeal the New Jersey Appellants claim that genuine disputes of material fact exist regarding the sufficiency of the notice of termination provided by RRF.

Section 56:10-5 of the NJFPA provides that, among other things, a franchisor may not unilaterally terminate a franchise "without having first given written notice setting forth all the reasons for such termination . . . to the franchisee at least 60 days in advance" of such termination. N.J. Stat. Ann. § 56:10-5. Here, the record shows that RRF mailed a letter to AAH and the Patels on January 19, 2010, describing both its intent to terminate the New Jersey franchise agreement and its reasons for doing so. (Supp.

10

App. 301–03.)  On April 20, 2010, RRF mailed a second letter to AAH and the Patels which formally terminated the New Jersey franchise agreement.

The New Jersey Appellants submit that the January 19, 2010 letter was merely a notice of default, and that because it provided a final opportunity to cure, it did not constitute "written notice of termination" as required by § 56:10-5.  Instead, according to the New Jersey Appellants, the letter of April 20, 2010 was the first "notice of termination," and as a result, RRF was not entitled to terminate the franchise agreement until June 2010.

The New Jersey Appellants' arguments on this point are meritless.  RRF signaled an unambiguous intent to terminate the franchise agreement in its letter of January 19, 2010.  We find no support for the contention that extension of a final opportunity to cure invalidates such notice for purposes of the NJFPA.  Thus, by the time RRF formally terminated the agreement in its letter of April 20, 2010, it had satisfied its notice obligations under New Jersey law.  We will therefore affirm the District Court's orders of June 28, 2012 and May 2, 2013 to the extent that they granted summary judgment in favor of RRF on the New Jersey Appellants' counterclaims for violations of the NJFPA.

IV.

We now consider the Minnesota Appellants' challenge to the District Court's orders granting summary judgment in Case No. 13-2564, the second of these consolidated actions.  The entirety of Appellants' legal argument in this regard consists of the following statement: "In Alpesh Patel's case, Civ. A. No. 1-10-cv-04120, the

11

arguments are the same as presented in this brief, except that arguments regarding the [NJFPA] do not apply." Appellants' Br. at 9.

It is a bedrock rule of procedure that an appellant who appears before this Court must submit a brief containing, among other things, "a concise statement of the case setting out the facts relevant to the issues submitted for review," as well as "citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. App. P. 28(a); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). Here, Appellants' "Statement of Facts" makes no reference to the purportedly material breaches of the Minnesota franchise agreement by RRF—the material breaches that we presume are the centerpiece of the Minnesota Appellants' claims. Appellants' Br. at 7. Nor do Appellants discuss or even cite to the Minnesota franchise agreement, the affidavit of Alpesh Patel, or any other item of evidence relating specifically to that case. Likewise, although Case No. 13-2564 arose in Minnesota, Appellants make no reference to Minnesota law.

In consolidated cases presenting similar issues of fact and law, some degree of incorporation by reference may well be justified in the interest of efficiency. Nonetheless, where a party appeals from a district court order granting summary judgment, some tailored discussion of the facts, or at least a bare reference to those facts, will be necessary in all but the most unusual circumstances. Here we see no justification for the cavalier presentation made by the Minnesota Appellants. Accordingly, we will consider the Minnesota Appellants' claims waived as to Case No. 13-2564.

12

In the alternative, to the extent that the Minnesota Appellants concede that there are no material factual or legal differences between Cases No. 13-2564 and 13-2563, we will affirm the orders of the District Court in Case No. 13-2564 for the same substantive reasons articulated above with respect to Case No. 13-2563.

V.

For the foregoing reasons, we will affirm the District Court's orders of June 28, 2012, March 28, 2013, and May 2, 2013.